**Ralph Clinton RIGGINS**

v.

**UNITED STATES of America.**

**Civ. A. No. 4-496.**

United States District Court
N. D. Texas,
Fort Worth Division.

June 9, 1966.

George E. Cochran, Fort Worth, Tex., for plaintiff.

Robert S. Travis, Asst. U. S. Atty., Fort Worth, Tex., for defendant.

## OPINION

BREWSTER, District Judge.

This Section 2255 motion prays that petitioner be brought back to Fort Worth from the federal penitentiary for an evidentiary hearing, and that the Court vacate his conviction and concurrent sentences upon his plea of guilty to each of two counts of an indictment in Cr. No.

4–238, United States of America v. Ralph Clinton Riggins, in this Court, charging violations of the National Firearms Act, 26 U.S.C.A. §§ 5851 and 5861, growing out of his unlawful possession of a 20 gauge sawed-off shotgun having a nine inch barrel. The petitioner challenges his conviction on the grounds that (1) he was denied his constitutional right of assistance of counsel; (2) that he was not taken before a magistrate without unnecessary delay as required by Rule 5(a), F.R.Cr.P.; and (3) that the search of his motor vehicle and the seizure of his sawed-off shotgun found therein were illegal.

■ Even if it were proper to raise the last two contentions by a Section 2255 motion,[1] there is no merit in any of the grounds relied upon because the files and records positively belie petitioner's claims and conclusively show that he is not entitled to any relief under his motion.

On the basis of the language of 28 U.S.C.A. § 2255,[2] itself, the courts have consistently held that a petition to vacate a federal conviction should be dismissed without a hearing where the files and records of the case conclusively refute the petitioner's claims and show that he is not entitled to any relief.[3]

The criminal case against the petitioner was called for arraignment on June 4, 1965, along with different cases against a number of other defendants. To avoid needless consumption of time by repeated detailed explanation of their individual rights as each case was taken up separately, their rights were explained to them in great detail while they were standing as a group before the bench, with emphasis being put on the fact that such rights belonged to each defendant individually.[3a] When each case was called separately thereafter, the Court reviewed those rights and made sure that each defendant understood not only what his rights were, but the importance of them. When the petitioner's case was called separately for arraignment, the Court again explained his right to be represented by counsel; that he had a right to employ one of his own choosing; and that the Court would appoint one for him if he was financially unable to provide his own. Petitioner informed the Court that he owned and operated an automobile paint and body shop; that he had an income of about $650.00 or $700.00 a month; that he understood that he was entitled to have a lawyer; and that he was able to hire a lawyer,

1. Contentions of this type should be raised by appeal rather than by a motion under 28 U.S.C.A. § 2255.

2. 28 U.S.C.A. § 2255 provides: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. * * *"

3. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1961); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Smith v. United States, 5 Cir., 265 F.2d 14 (1959); Aeby v. United States, 5 Cir., 267 F.2d 540 (1959); Barrett v. United States, 5 Cir., 302 F.2d 151 (1961); Brown v. United States, 6 Cir., 212 F.2d 589 (1954); Adams v. United States, 95

U.S.App.D.C. 354, 222 F.2d 45 (1955); Schumpert v. United States, 6 Cir., 226 F.2d 578 (1955); Cain v. United States, 8 Cir., 271 F.2d 337 (1959); Nunley v. United States, 10 Cir., 283 F.2d 651 (1960); Machin v. United States, 8 Cir., 290 F.2d 621 (1961); Moore v. United States, D.C.Tex., 236 F.Supp. 621, affirmed 5 Cir., 334 F.2d 25 (1964).

3a. These proceedings are shown in two transcripts on file herein, one of which contains the explanation to the defendants when they stood as a group, and the other, the explanation to the petitioner when his particular case was called. The petitioner was free on bail; and, as usually happens where an accused is out on bail and has no lawyer, he showed up late. He came in just as the United States Attorney completed calling the list of names of those to be arraigned. He admitted he heard the explanation to the group.

but did not want one.[4] Petitioner was 30 years old, and had a high school education and some specialized correspondence work.[5] After extended proceedings that convinced the Court that the petitioner knew and understood his right to counsel, and that he had the maturity and capacity to make his own decision about whether he wanted one, the petitioner still insisted on his right to proceed without a lawyer.

The individual rights of a person facing arraignment were again explained to petitioner, and he was thereupon arraigned. The petitioner then pleaded guilty to each of the two counts. The Court interrogated him in detail to satisfy himself that the plea of guilty that the defendant wanted to enter was voluntarily and understandingly made, with full knowledge of the consequences; and after so doing, the Court said: "Well, I am going to think this over for a few days. You be back up here on Monday, June 14. That is Monday week. Just come in court up here."

When the defendant appeared for the second time on June 14, 1965, the following transpired:

"THE COURT: Mr. Riggins, on June 4th, you plead guilty to the indictment here, to each count of the indictment, and you told me at that time you were able to hire a lawyer, but that you did not want one. You told me that you had an income of $600.00 to $700.00 a

---

4.

"THE COURT: Mr. Riggins, have you got a lawyer?

"MR. RIGGINS: Yes, sir. Mr. Cochran is my lawyer.

"THE COURT: Have you paid him a fee?

"MR. RIGGINS: No, I didn't feel it was necessary, because I wanted to plead guilty to the case, the charge. A lawyer wouldn't give me any right to violate the law. I own a paint and body shop.

"THE COURT: You own a paint and body shop?

"MR. RIGGINS: Yes, sir.

"THE COURT: You are able to hire a lawyer?

"MR. RIGGINS: Yes, sir.

"THE COURT: If you wanted to?

"MR. RIGGINS: Yes, sir.

"THE COURT: How much do you make in your paint and body shop?

"MR. RIGGINS: About $650.00 or $700.00 a month.

"THE COURT: You understand that you are entitled to have a lawyer, and an opportunity to hire one if you want one?

"MR. RIGGINS: Yes, sir.

"THE COURT: Are you telling me you don't want to hire a lawyer?

"MR. RIGGINS: No, sir, I do not.

"THE COURT: What are your thoughts about hiring a lawyer?

"MR. RIGGINS: Well, I believe it would just be a waste of money, when I want to plead guilty. And I feel I can show you just how it was, as I told them, how everything happened."

* * * * *

"THE COURT: And you are asking me to let you proceed now without a lawyer, knowing you have a right to have a lawyer?

"MR. RIGGINS: Yes, sir.

"THE COURT: And knowing that I would give you time to hire one?

"MR. RIGGINS: Yes, sir."

* * *

(NOTE: Subsequent developments during the sentencing proceedings—such as the character of the defendant, the way he was conducting himself, and the fact that he was switching license plates on cars he was working on in his garage—were sufficient to cast some doubt on whether he was conducting his business in a legal manner. The Court did not inquire into that feature, however, as he was of the opinion that he had no right to ask the petitioner about it, and that the only thing that mattered was whether the petitioner had the money to hire a lawyer, regardless of how he had made it.)

5.

"THE COURT: How old are you?

"MR. RIGGINS: I am 30 years old.

"THE COURT: 30?

"MR. RIGGINS: Yes, sir.

"THE COURT: What kind of education have you had?

"MR. RIGGINS: I finished high school and did some correspondence work. I finished a course in the management of small business, by correspondence. And I took some typing and real estate.

"THE COURT: You run your own business?

"MR. RIGGINS: Yes, sir.

"THE COURT: You manage it?

"MR. RIGGINS: Yes, sir."

month, and you had just elected not to hire a lawyer.

"I told you at that time that if you wanted to hire one, even then, I would give you time to do it.

"Now in view of the fact that you did not have a lawyer, I wanted to look into your case further, and so I set it over until today. Now, do you still desire to go ahead without a lawyer?

"MR. RIGGINS: Yes, sir.

"THE COURT: You have a right to do that. I am convinced you know what your rights are. You heard me explain to the defendants, and you were listening in the group when I explained that each defendant had the right to a lawyer, that he had the right to employ one, and if he couldn't employ one, the Court would appoint him one? You heard that?

"MR. RIGGINS: Yes, sir.

"THE COURT: *I will still give you a chance to hire one and contest your case if you want to do it.* What do you want to do about that?

"MR. RIGGINS: I would like to plead guilty.

"THE COURT: You still want to go ahead without a lawyer?

"MR. RIGGINS: Yes, sir.

"THE COURT: All right, I am convinced that you know what you are doing. You are very highly intelligent, at least you give me that impression, and I am convinced you know what your rights are. If you want to waive them, you have got a right to. *You understand that is a very important right?*

"MR. RIGGINS: *Yes, sir.*

"THE COURT: *One a man ought to think about a long time before waiving—you understand that?*

"MR. RIGGINS: *Yes, sir.*

"THE COURT: *You still want to waive it?*

"MR. RIGGINS: *Yes, sir, I understand. I would like to waive it.*"

The petitioner was not in a strange atmosphere when he was in court facing trial on a criminal charge. He had had a varied experience in both felony and misdemeanor cases. He was convicted and given a prison term for burglary of a private residence at nighttime. After he had served that sentence he was tried for armed robbery and acquitted. Shortly before his arrest on the present case, he was convicted on a drunk driving charge. His record shows numerous other brushes with the law. He had a defiant, not a weak-willed personality. His record as a convict at the state penitentiary stated that he was lazy and unsatisfactory in the performance of his duties; that he was constantly conniving, refusing to obey orders, violating the rules and fighting. It said that he had "a sullen attitude, hostile to authorities." [6] It was evident to the Court here that he had a mind of his own, and knew what he was doing when he made his decisions to waive counsel and to plead guilty.

■ Under the circumstances, the Court was required to recognize the petitioner's right to represent himself.[7] Juelich v. United States, cited in footnote 7, says at p. 31 of 342 F.2d that, *"in a criminal prosecution the right to defend pro se is a constitutionally protected right."* The Court could not have gone further than it did in this case without violating the petitioner's constitutional rights.

■ While the Court could not force counsel upon the petitioner, it took steps far beyond those required by law to determine if there was any point favorable

---

**6.** This portion of the pre-sentence report was read to the petitioner and he gave no explanation of it.

**7.** Sixth Amendment, Constitution of United States. 28 U.S.C.A. § 1654. Adams v. United States, ex rel. McCann, 317 U.S.

269, 279, 63 S.Ct. 236, 241. 87 L.Ed. 268 (1942); Duke v. United States, 9 Cir., 255 F.2d 721, 724 (1958); MacKenna v. Ellis, 5 Cir., 263 F.2d 35, 40 (1959); Juelich v. United States, 5 Cir., 342 F. 2d 29, 31 (1965). Anno. 77 A.L.R.2d 1233.

to the petitioner that a lawyer representing him might raise. When the hearing was put over for ten days, the Probation Officer was requested to make a further investigation to discover any information favorable to the petitioner. The prosecution was instructed that it should have the arresting officers present so that inquiry could be made into the legality of the arrest and search, and that it would be required to show the petitioner's guilt by evidence. It was only after the Court was satisfied from detailed evidence on those matters that he made a final decision to impose a sentence based on the petitioner's plea of guilty.[8] Under the circumstances, the files and records conclusively show that there is no merit in petitioner's claim that he was deprived of his constitutional right to be represented by counsel.

The petitioner's claim that his conviction is void because his rights were violated under Rule 5(a), Rules of Criminal Procedure, is without merit for each of the following reasons:

1. This point cannot be raised by a motion to vacate under 28 U.S.C.A. § 2255. Kristiansand v. United States, 5 Cir., 319 F.2d 416 (1963).

■ 2. The U. S. Commissioner's docket, which is a part of the file in the criminal case in the office of the Clerk of this Court, shows that the petitioner first came into federal custody on May 7, 1965, three days after the return of the indictment against him. The arrest was made upon a warrant issued on May 4th. He was taken before the U. S. Commissioner on the date of his arrest and was immediately released upon bail. The petitioner's appearance before the U. S. Commissioner was therefore without unnecessary delay after he came into federal custody. Whether he was in state custody from the time of his arrest until then does not appear; but that fact would be immaterial, as detention by state officers is not within the protection of Rule 5(a), Federal Rules of Criminal Procedure. Burke v. United States, 1 Cir., 328 F.2d 399, cert. den. 379 U.S. 849, 85 S.Ct. 91, 13 L.Ed.2d 52 (1965); McAvoy v. United States, E.D.La., 240 F.Supp. 840 (1965).

■ 3. If the petitioner was detained for any length of time during the period between his original arrest and his coming into federal custody, there is no claim that any evidence harmful to him was obtained during that time.

The petitioner's attack upon the legality of his conviction on the basis that the search and seizure were illegal is un-

---

8. This appears in several places in the transcript, but the following statement made by the Court in answer to petitioner's plea that he not be imprisoned gives a short summary of what was done:

"THE COURT: I surely wish I could go along with you on that. I have gone way beyond what the law requires me to do here in your case because you did not have a lawyer. I ordered them to bring witnesses in here to go into the matter to see if the arrest was legal, to see if the search was legal, to see if there was enough evidence to make out a case on all these things, just like I was representing you. *I had my mind made up that if the government could not make out a case, or if there was any question about the legality of the search or any legal point that convinced me you might be able to beat the case before a jury, I would refuse to accept your plea of guilty, and let you withdraw it, or or-der it withdrawn, then have a jury trial on a plea of not guilty.*

"But I am convinced that everything about the case and the arrest was legal. The arrest was legal and the search was legal. I am convinced they have got a good case on you, and I am convinced you are guilty. I am convinced that you were not up to anything good running around at 4:00 o'clock in the morning with a sawed-off shotgun in that car, and with your background here. You just do not stay out of trouble. You are just in it all the time. You are going to have to make up your mind a lot more than you have got it made up now. You are still a young man. When you get through serving this sentence, you can straighten up. But you have just never made up your mind to submit to authority anywhere you have ever been. You have got to recognize authority before you can have self-discipline."

tenable for each of the following reasons:

1. This ground cannot be urged by a motion to vacate under 28 U.S.C.A. § 2255. Kristiansand v. United States, supra.

2. The testimony of the arresting officers, given under oath, shows that the arrest and search were legal.

The petitioner was arrested within the city limits of Fort Worth during the early morning hours of April 18, 1965, by city officers from two patrol cars. He was driving a pickup truck. The attention of the officers was first drawn to the truck when one of them observed it stopped in the middle of a street in the area of some business buildings about 4:00 o'clock in the morning. When the patrol car approached, the lights of the pickup were flashed on and off. That was a warning sign frequently used by a party waiting in a getaway vehicle to pick up a confederate who had gone into a building or residence to burglarize it. The truck moved on and temporarily passed out of the sight of the officers. It circled a block or two, and was next seen when it was coming back towards the place where the officers had first observed it. At that time the officers saw that it had no front license plate on it. The two patrol cars then gave chase and stopped the pickup. Since a motor vehicle violation was involved, the officers approached the truck asking the petitioner for his driver's license. He had no driver's license or identification of any kind. He gave the officers a fictitious name. When he said that he had no driver's license, he was told to get out of the truck; and he did so with his right hand in his pants pocket. He was holding a 20 gauge shotgun shell in his closed fist when he removed it from his pocket. The officer then looked toward the truck; and from where he was standing, he could see the sawed-off shotgun on the floor of the pickup partially under the driver's seat. He took possession of the shotgun immediately, and found two more 20 gauge shells for it in the glove compartment of the truck.

■■■■ The petitioner was guilty of a misdemeanor in operating his motor vehicle with only one license plate on it.[9] The Uniform Act Regulating Traffic on Highways,[10] which is a part of the Texas Penal Code, gives any peace officer of Texas the authority to make an arrest without a warrant for an offense occurring in his presence relating to highways and motor vehicle violations.[11] The officers therefore had the right to stop and arrest the petitioner when they saw that he had no license plate on the front of his pickup. After they did so stop him, they had the further right to inquire about his driver's license. The arrest was legal; and since the search was made at the place of the arrest and within minutes thereafter, it was also legal. In addition, the officers saw the gun before they made any search of the truck, and therefore had a right to take possession of it. Jackson v. United States, 5 Cir., 319 F.2d 782 (1963).

■■■■ The above are the only points raised in the motion, but another matter not so raised will be answered at this time so that the petitioner will not be a

---

9. Article 807b, Sec. 5, Vernon's Ann. Texas Penal Code provides:
   "Any person who operates a passenger car or a commercial motor vehicle upon the public highways of this State any time during any month of a motor vehicle registration year without having displayed thereon, and attached thereto, two (2) license number plates, one (1) plate at the front and one (1) at the rear, which have been duly and lawfully assigned for said vehicle for the current registration year, shall be guilty of a misdemeanor * * * *."

10. Article 803, Texas Penal Code, which is a part of Chapter 1, Title 13, entitled "Highways and Vehicles", provides:
    "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of the preceding articles of this chapter."

11. Minor v. State, 153 Tex.Cr.R. 242, 219 S.W.2d 467; Baker v. State, 154 Tex. Cr.R. 116, 225 S.W.2d 828; Milligan v. State, 170 Tex.Cr.R. 584, 343 S.W.2d 455; Brown v. State, 172 Tex.Cr.R. 485, 358 S.W.2d 388.

further victim of a charge by his convict legal adviser for preparing a second motion raising a point conclusively belied by the record. In a typewritten instrument that was filed in answer to the government's brief opposing his motion to vacate,[12] he argues that when he was first taken into state custody, he was threatened and verbally abused and told that it would be rougher on him if he did not plead guilty. The transcript of the proceedings in this case positively refutes that claim.[13] It shows that petitioner told the Court that his plea was not induced by force, threats or promises; that he was not pleading guilty under pressure, fear or force of any kind; that he was pleading guilty just because he was guilty, and for no other reason; that no law enforcement officer had mistreated him at any stage of the proceedings from the time he first came in contact with them; and that nobody had tried to tell him what the Court might do on the question of penalty. In addition, the petitioner was invited to and did question the two arresting officers in detail when they testified on this hearing, and he never suggested mistreatment or imposition in any form.

◼ Utmost precaution was used to see that the rights of this mature, intelligent, determined man were protected, and that he fully understood his rights and what he wanted to do. If the Court is required to bring this petitioner back from the penitentiary for an evidentiary hearing under the circumstances shown by this record, then the courts are truly as helpless in these post-conviction proceedings as the criminals now think they are.

There is no substantial basis for the grounds urged by the petitioner. His claims are positively repudiated beyond any question by the files and records in this case. The relief requested by him will therefore be denied, and his petition will be dismissed.

---

12. This instrument is styled, "A Response in Rebuttal Toward the Claims of Robert S. Travis, Assistant United States Attorney, against my Motion To Set Aside And Vacate Judgment."

13.
"THE COURT: Has anybody promised you anything to get you to plead guilty?
"MR. RIGGINS: No, sir.
"THE COURT: Has anybody threatened you to try to make you plead guilty?
"MR. RIGGINS: No, sir.
"THE COURT: Has anybody tried to force you to plead guilty?
"MR. RIGGINS: No, sir.
"THE COURT: *Are you pleading guilty under any pressure, fear or force of any kind?*
"MR. RIGGINS: *No, sir.*
"THE COURT: Are you pleading guilty solely just because you are guilty and for no other reason?
"MR. RIGGINS: That's right.
"THE COURT: You understand that if I accept your plea of guilty, I will have to find you guilty on each count, and assess a penalty somewhere in the range provided by statute, which, as I explained to you a while ago, can be a fine as high as $2,000.00 on each count, or imprisonment as high as five years on each count, or both such fine and imprisonment on each count. Do you understand that?
"MR. RIGGINS: Yes, sir, I do.
"THE COURT: You are on bond now, are you not?
"MR. RIGGINS: Yes, sir.
"THE COURT: *Has any law enforcement officer mistreated you at any stage of the proceedings from the time you first came into contact with them until now?*
"MR. RIGGINS: *No, they haven't.*
"THE COURT: Has anybody tried to tell you what the Court might do on the question of penalty in this case?
"MR. RIGGINS: No, sir.
"THE COURT: Nobody promised you anything?
"MR. RIGGINS: No promises at all."