## JOHN TONES v. THE STATE.

### No. 3000. Decided June 7, 1905.

**1.—Robbery—Preparation Before Robbery to Identify Robbers Did Not Give Consent.**

Where there was no agreement between the prosecutor and the defendant that the former would submit to the robbery, or any invitation on his part or any device to lead defendant to the commission of the offense, but simply an anticipation that he would be robbed and a preparation on the part of prosecutor to identify the robbers, there was no consent to the robbery in such measure as to absolve defendant from criminality.

**2.—Same—Force—Search—Arrest—Intent—Violence—Officer.**

Where in a prosecution for robbery the evidence showed intent on the part of defendant at the time he as policeman arrested the prosecutor, to take and appropriate the money found on the latter, and that in searching him he rudely backed him up against the wall and held his hands up and extracted his money from his pocket and fraudulently appropriated same, it was sufficient force and violence to bring the case under the definition of the offense of robbery under an indictment charging that defendant committed robbery by an assault and by violence, etc.

**3.—Same—Want of Consent—Violence—Anticipation And Detection of Robbery.**

Where in a prosecution for robbery the evidence showed that the prosecutor was furnished with marked currency money in order to detect the guilty parties who might rob him, and was sent by an officer of the law to the city of D. with said money and two dollars in silver with which to buy whisky for the purpose of detecting unknown parties who were committing robberies in connection with violations of the local option law in said city, and the prosecutor was arrested by defendant and another policeman for drunkeness, taken to jail, rudely searched, and the said money taken from him by them and appropriated with fraudulent intent, not asking the prosecutor's consent to be searched, but using violence to make search, there being no agreement between the parties or invitation that the arrest or search should be made. Held that there was such want of consent and such violence as to constitute the transaction robbery under the law.

**4.—Same—Charge of Court—Charges Refused.**

See charges of court which are approved, and special charges correctly refused.

**5.—Same—Evidence—Memoranda—Harmless Error.**

Where the currency bills, in a trial for robbery, were abundantly identified as those taken from the prosecutor, the admission in evidence of the paper memorandum containing the numbers and denominations of said bills, made before the robbery, to identify them thereafter, if erroneous, which is doubted, was not reversible error.

Appeal from the District Court of Grayson. Tried below before Hon. B. L. Jones.

Appeal from a conviction of robbery; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

The following are the court's charges to which defendant excepted and as taken from his brief: The court erred in its main charge to the jury, after presenting affirmatively the defendant's right to arrest, place in jail, and search the prisoner, in attempting to limit and qualify his charge in the following manner: "But in this connection you are charged that, if you believe from the evidence beyond a reasonable doubt, that the defendant, at the time of said arrest, had the intent to fraudulently take from the person and possession of the said J. P. Richards, without the consent of the said J. P. Richards, with the intent to appropriate it to the use and benefit of him, the said John Tones; that at the time of said arrest or at any time before said money was taken, if you believe beyond a reasonable doubt that said money or any of said money was taken, the defendant, either alone, or acting with one Steve Finley as principal, did by force or violence upon said J. P. Richards take from the person and possession of the said J. P. Richards any of the money described in the indictment with the fraudulent intent then and there on the part of him, the said defendant, to appropriate said money to his own use and benefit, then the defendant would be guilty of robbery, as previously charged you herein, regardless of the fact whether or not the said J. P. Richards was then and there under the arrest of the defendant."

The court erred in giving the following portion of its main charge to the jury: "If you believe from the evidence that the money described in the indictment was in the care, custody, and control of the said J. P. Richards, then you are instructed that the said J. P. Richards was the owner of said money, as the term owner is used in this charge."'

The following were the defendant's requested charges as per appellant's brief: For the purpose of convenience, the appellant assigns error on the court's failure to give the two following instructions, and groups them in this assignment.

1. "You are instructed, that if you believe from the evidence that the owner or owners of the money alleged to have been taken from the witness, Richards, placed the same in his hands or possession for the purpose of having the same taken from him either by assault, by violence or by putting him in fear of life or in any other manner, and the witness Richards knew this and placed himself in a position, knowingly to be robbed or to have the money taken from him, and offered no resistance to the money's being taken, if it was taken, and that same was taken with his consent, then you should acquit defendant."

2. "You are instructed that if the witness Richards went to Denison

on the occasion of his being robbed, if he was robbed, and on the occasion of his having money taken from him, if it was taken, for the purpose of having it taken from him either by an act of robbery, or otherwise, and placed himself in a position by his conduct to cause his arrest on a proper charge, for the purpose of being robbed or having his money taken from him, and after having been so arrested and having his money taken from him without protest or objection on his part, that said conduct would be in law consenting on the part of the witness Richards, and if you so believe from the testimony, it is your duty to acquit the defendant."

The court erred in failing to give the following special instructions requested by the defendant, to which action of the court in so refusing, the defendant duly excepted: 1st. "You are instructed, and bearing in mind the definition of assault and violence heretofore given, you are instructed that robbery can only be committed in one of three ways defined by law, namely: By an assault, by violence, or by putting in fear of life or serious bodily injury. The evidence in this case failing to show an assault, failing to show violence on the part of the defendant toward the witness Richards, or failing to show that the witness Richards was put in fear of life or serious bodily injury, you are instructed to acquit the defendant." 2nd. "You are instructed, on account of the State failing to establish by competent testimony the facts alleged in the indictment, and on account of the insufficiency of the proof, to find the defendant not guilty."

The court erred in refusing to give the following special instruction requested by the defendant: "In order to constitute the offense of robbery, by violence, some resistance on the part of the party robbed, however slight, must be overcome by the defendant, or by the party charged with committing the offense. If you believe from the evidence, or if you have a reasonable doubt thereof, that the witness Richards offered no resistance to the money being taken from his person by the defendant, if it was so taken, you should acquit the defendant."

*E. J. Smith, F. N. Robertson* and *R. H. Thompson,* for appellant.—Where the testimony fails to show, on a charge of robbery, that an assault was made, or any illegal violence used, or the person put in fear of life or bodily injury, the court should instruct a verdict of acquittal. 2 Bishop's Crim. Law, sec. 1167 and 438; 1 Wharton's Crim. Law, sec. 854 and 141; 1 McClain's Crim. Law, sec. 468; Harrison & Johnson v. State, 35 Texas Crim. Rep., 140; Davis v. State, 37 Texas Crim. Rep., 47; Frank v. State, 30 Texas Crim. App., 381; State v. McCune, 70 American Decisions (notes), 176; Files v. State, 36 Texas Crim. Rep., 206; Beard v. State, 44 Texas Crim. Rep., 402; Mathews v. State, 10 Texas Crim. App., 279.

Where money is placed upon the person with the purpose of being taken from him in order to detect a criminal, the owner of the money and the person from whom the money is taken consenting thereto,

robbery is not committed. Speiden v. State, 3 Texas Crim. App., 156; 30 Am. Rep., 126; 36 Am. State Rep., 298; 24 Am. State Rep., 364; McGee v. State, 66 S. W. Rep., 562; 91 Am. Decisions (notes), 483; 72 Am. State Rep., 705; People v. McCort, 76 Mich., 200; People v. Mills, 178 N. Y. Rep., 274; Love v. People, 160 Ill., 501; Connor v. People, 18 Colo., 373; O'Brien v. State, 6 Texas Crim. App., 665; Comonwealth v. Bickings, 12 Dist. Repts., 206.

On question of violence necessary in robbery: Merrell v. State, 42 Texas Crim. Rep., 19.

*Howard Martin,* Assistant Attorney-General, and *Galloway & Vowell,* for the State.—We cannot more fully and plainly state the position of the State than to quote from the State v. McAfee, 50 S. W. Rep., 82: "Besides Brewer did not induce the formation of the intent of the defendant to rob him. He did not procure his property to be taken, and his merely placing it in the power of defendant to execute his own original purpose of robbing him did not render the attempted robbery any the less invito domino."

HENDERSON, Judge.—Appellant was convicted of robbery, and his punishment fixed at confinement in the penitentiary for a term of nine years; hence this appeal.

The State's case briefly stated is as follows: H. S. Rich was constable of precinct number 1, at Sherman, and Marion Nicholas was also a resident of Grayson County. Nicholas suspected that some robberies and violations of the local option law were being committed in the city of Denison. He conferred with Rich about the matter, and as a result of their conference, Rich agreed to get a man to see if he could not catch up with the parties committing said offense. He selected prosecutor Joe Richards, a painter and a resident of Sherman. On the day preceding the night of the alleged offense, these three parties met in Sherman and gave Richards $40, $38 of which was furnished by Nicholas and consisted of one $10 bill, and five $5, and three $1 bills of United States currency. The numbers of all these bills were taken on a slip of paper by the parties at the time. Besides they were marked, and from some of the bills small portions were torn off. The remaining $2 in silver was furnished by Rich, constable. It was understood that Richards was to go to Denison that night, buy all the whisky he could with the silver money, but was not to spend the currency. These bills were placed with him to be used to detect any parties who might rob prosecutor Richards, should he be robbed. In pursuance of this agreement Richards and Nicholas went that evening or night to Denison. After getting there Nicholas separated from prosecutor Richards. Richards immediately proceeded to the execution of the plan, went to several joints, drank some beer and a drink of whisky; and bought two pint bottles of whisky at two different joints. Subsequently he was seen on the street by appellant, who was a policeman of Denison,

and by Finley, also a policeman. He was at the time either drunk or acting in a manner to suggest he was drunk. They accosted him and charged him with being intoxicated. He seems to have denied it, stating he could take care of himself and had money to pay his way, and that he was from the territory. They arrested him, however, and marched him to the jail, one on either side of him. When they got there, they took him inside, stood him against the wall, held his arms up and searched him. They took from him the roll of currency bills before mentioned, 55 cents in silver, a pocket book and the two pint bottles of whisky. They deposited with the jailer the two pints of whisky and the purse and 55 cents. The balance of the money they did not deposit. The next morning on complaint of Richards, appellant and his codefendant Finley were arrested and searched. On appellant's person was found four $5 bills, and one $1 bill; and on Finley was found a $10 bill and a $5 bill and one $1 bill. All of these bills were thoroughly identified by witness Rich as the same currency bills that he and Nicholas had given to prosecutor Richards on the evening before. All of said currency that had been given said Richards was found, except two $1 bills not accounted for. Appellant denied that he got any money off of Richards on the night before, except the 55 cents, and claimed the money found on his person as his own property, which he had borrowed on the day before from one Carver. Finley also denied that they had taken any money from Richards, except the 55 cents, and accounted for and claimed the money on his person as his own. It was also shown on the part of appellant that when they arrested prosecutor, he claimed to have been robbed of his watch and some money in a house of prostitution in Denison. This is a sufficient statement of the case to discuss the legal questions presented.

We understand appellant's defense to embrace two propositions; first, that prosecutor was willing to be robbed, prepared himself for that purpose, made no resistance; and conceding that the money was taken from him, under the circumstances by the officers, that it was with his consent and so there could be no robbery. Second, that appellant and his companion Finley were police officers of the town of Denison; that they were authorized by ordinance to arrest persons found drunk in any public place in said city; that appellant was found in such condition by them, and they took him into custody, and carried him to jail; that they had a right to search him; that they used no violence in said search; and that in the absence of any violence used in procuring the money, conceding that they did procure it, this would not constitute robbery. Furthermore, if it be admitted that sufficient violence was shown in taking the money still no intent was shown to appropriate it, and if subsequently they formed the intent and did appropriate said money, it would not constitute robbery.

On the first proposition, appellant has cited a number of authorities, from which he deduces a principle of law, as follows: Where money is

placed upon a person with the purpose of being taken from him, in order to detect a criminal, the owner of the money and the person from whom the money is taken consenting thereto, robbery is not committed. The authorities cited in support of this proposition are Spiden v. State, 3 Texas Crim. App., 156; Connor v. Peo., 18 Colo., 373; 36 Am. St. Rep., 295; State v. Hayes, 105 Mo., 76; 24 Am. St. Rep., 360; Magee v. State, 66 S. W. Rep., 562. Notes to Allen v. State, 91 Am. Dec., 477; note to State v. Hull (Ore.), 72 Am. St. Rep., 694. Of course, if it be conceded that the evidence shows that the prosecutor was consenting to the robbery, then the application of the authorities cited may be granted. However, we gather from the authorities cited by appellant, and others, that as to the offense of burglary, larceny, robbery, and other crimes of like character, if the owner of the burglarized premises, or property invites a crime, or induces parties to commit an offense in order that they might be apprehended, that he cannot afterwards be heard to say that he did not consent to what was done. It was so held in Allen's case; the principle is further extended by some of the cases, that where the owner of the premises sought to be burglarized, authorizes his servant to act with the accused, and under the owner's direction unlocked the door of the premises said to be burglarized, and entered the premises with the accused, this was held not to be burglary, because of his consent. In Spiden's case, which was the alleged burglary of a bank in Dallas, it appears that the owners set on foot the design to have the bank burglarized, and had detectives go in with the burglars. In that case, it was held there was consent. But we do not believe it is held by any well considered authority, that where a person has learned of plans to burglarize his premises, and does not at all, enter into the designs of the burglar, but does not try to prevent the burglary, on the contrary lays plans to entrap the burglar, and does apprehend him in the act, there is no consent to the burglary, and the burglar is amenable to punishment. Robinson v. State, 34 Texas Crim. Rep., 71; Thompson v. State, 18 Ind., 386; State v. Sneff, 22 Neb., 481. And we understand the same principle is announced in Alexander v. State, 12 Texas, 540; Pigg v. State, 43 Texas, 108; Johnson v. State, 3 Texas Crim. App., 590; 1 Bishop Crim. Law, sec. 262. In Alexander's case, Judge Wheeler cites with approval the principle laid down in 3 Chitty's Crim. Law, page 952, as follows: "If the owner in order to detect a number of men in the act of stealing, directs a servant to appear and to encourage the design and leads them on until the offense is completed, so long as he did not induce the original intent, but only provided for its discovery after it was formed, the criminality of the thieves will not be destroyed." In 2 Russell on Crimes, page 113, citing 1 Foster, page 129, he refers to a case very much in point and illustrative of the principle of law here involved. We quote as follows: "One Norden having been informed that one of the early stage coaches had been frequently robbed near the town by a single highwayman, resolved to use his endeavors to apprehend the rob-

ber. For this purpose he put a little money and a pistol into his pocket, and attended the coach in a post-chaise, until the highwayman came up to the company in the coach and to him, and to them presented a weapon demanding their money. Norden gave him the little money he had about him, and then jumped out of the chaise with a pistol in his hand, and with the assistance of some others took the highwayman. This was holden to be a robbery of Norden." It occurs to us, that the facts of this case come within the principle of the above case. Here there was no agreement between prosecutor Richards and appellant that he would submit to a robbery, as was the case in Rex. v. McDaniel, 1 Foster's Rep., 121, 128. Nor was there any invitation on his part, much less was there any device to lead appellant to the commission of the offense. While he anticipated, like Norden, that he might be robbed, he made no agreement with the robbers in that regard. Apprehending that he might be robbed he had a perfect right to prepare himself beforehand, in order that he might detect the persons guilty of the robbery, and this we understand to be all that he did. Under the authorities this is not consent to the robbery in such measure as to absolve appellant from criminality.

The next question is, was the violence used such as to constitute the offense? The indictment charges that appellant committed the robbery by an assault and by violence and by putting the said Richards in fear of life and bodily injury, etc. If either of these allegations is proven the offense is complete. It may be conceded here, that prosecutor was not in fact put in actual fear of life or serious bodily injury; but the authorities hold it is not necessary that actual fear should be strictly and precisely proved, as the law "in odium spoliatoris" will presume fear where there appears to be a just ground for it. Long v. State, 12 Ga., 293; Williams v. State, 51 Neb., 711. We take it, that the State's case depends on violence. If there be not a sufficient degree of violence proven, then the State has no case. We understand it is contended that whatever violence was used was authorized by law in making the arrest. This may be conceded so far as the arrest is concerned. But we do not understand it to be the law that officers can make a rightful arrest, and if they subsequently use violence and commit a robbery they will be exonerated on account of the legality of the alleged arrest. The books do not cite many cases of robbery where the offense was committed by officers after the arrest of the prisoner, yet there are some which recognize the principle as above stated. 2 Russell on Crimes, page 11, cites Gascoignes case, 1 Leach, 280, which is illustrative of this question. There a woman was arrested upon the charge of having committed an assault upon another woman who lodged in her house. She appears to have been committed to the custody of an officer, who took her in charge, threatened to put her in jail, handcuffed her and succeeded by alarming her, in getting from her several shillings. Nares, Justice, who tried the prisoner, said: "That in order to commit the crime of robbery it was not necessary that the

violence used to obtain the property should be by the common and usual modes of putting the pistol to the head or a dagger to the breast, and that the violence, though used under the color and specious pretense of law or of doing justice, was sufficient, if the real intention was to rob. And he left the case to the jury with the direction that, if they thought the prisoner had originally, when he forced prosecutrix into the coach, a felonious intent to take her money, and that he made use of the violénce or the handcuffs as a means to prevent her making resistance, and that he took the money with a felonious intent, they should find him guilty. The jury found that the prisoner had a felonious intention of getting whatever money the prosecutrix had in her pocket, and that the putting her into the state described in the evidence was only a colorable means of putting his felonious intention into execution. And upon the case being referred to the twelve judges, they were unanimously of the opinion that as it was found by the jury that the prisoner had an original intention to take the money and had made use of the violence under the sanction and pretense of the law for the purpose of obtaining it, the offense was clearly a robbery." Long v. State, 12 Ga., 293, is another case somewhat in point. There the court laid down the criterion which distinguishes robbery from larceny, as the violence, actual or constructive, which precedes the taking. There can be no robbery without violence and no larceny with it. It is further held, "If one against whom a crime has been committed with or without warrant arrests the offender and receives money or property without violence, actual or constructive, under an agreement not to prosecute, that is not robbery. Actual force in robbery implies personal violence. If there is any injury done to the person or if there is a struggle to retain possession of the property before it is taken, this is a sufficient criterion of force." It is further held, "If threats or accusations are accompanied with force, actual or constructive, and property or money is given up in consequence of this force, the case is robbery. Nor is the guilt of the party accused any defense to an act of robbery. If property is extorted by violence, upon a charge of larceny or any other crime, the offense is neither justified nor mitigated by his guilt nor aggravated by his innocence. The law will not permit the property or money to be violently taken from a citizen because he happens to be a guilty man. He is liable to the law if guilty, and under the protection of the law whether innocent or guilty." It is further held, "That there must be some degree of force used and the taking must be against the will of the person robbed; yet, it may seem to be with his consent, when it is really delivered from fear. If it is apparently voluntary, yet from the facts and circumstances it is from fear, it is still robbery." The facts and circumstances, however in that case as to the violence used, were stronger than in the case at bar; still the principles of law there laid down are applicable.

In Com. v. Snelling, 4 Binney (Pa.), 379, there as here, it was contended that the offense does not amount to robbery because the watch

was taken without his being in any fear of being robbed. The court lays down this rule: "To constitute a robbery, there must be a felonious taking of property from another by force. This force may be either actual or constructive. Actual force is applied to the body, constructive is by threatening words or gestures and operates on the mind. It is impossible in advance to comprehend all cases which may arise. As the different cases are presented the question will be whether they fall substantially within the principles of the definition. The verdict of the jury did not expressly find whether the watch was taken against Harrod's consent or not, but it did find that he did not know of its being taken. It was therefore held that it was without his consent. It was also found that he was in fear, not of being robbed, but of being beaten. The court held on this point, that fear is not an essential ingredient of robbery, force being sufficient. It was expressly found that the prisoner made use of force to obtain the watch; that is, he seized Harrod by the cravat, with his left hand and pressing him against the wall at the same time taking his watch from his fob." The court further say: "It is clear that the personal violence was the cause of Harrod's losing his watch. The fear of being beaten diverted his attention from his property, and this fear was produced by force, so that in truth the property was taken by force. The law is not to be evaded by fraudulent contrivances. * * * If it was the prisoner's intent to obtain the watch under cover of this violence, without the knowledge of the owner, it is to be construed the taking was by violence." And for other authorities on this subject, see note to State v. McCune, 70 Am. Decs., 182, 183. In Bussy v. State, 71 Ga., 100, 51 Am. Rep., 256, defendant pretended to be town marshal, and seized prosecutor, to whom another was showing a trick at cards, shoved him against the wall and threatened to take him to jail, unless he paid him money. Whereupon prosecutor paid him money, as he said, to keep him from going to jail and being bothered. (In Georgia threats to accuse prosecutor of a crime do not afford the basis of a prosecution for robbery, except in one instance—that is a charge of the crime against nature.) In that case the quotation above given from Long's case is cited with approval. The court further say: "These principles will be found in 2 East Pleas to the Crown, 714 to 736, and in 2 Russell on Crimes, page 117, et seq. The presumption is that the court below gave them to the jury, and that the jury found that the money was extorted from the prosecutor by violence on a charge of gambling and not by the mere fear of a criminal prosecution for that offense. If the jury so found, and there is evidence of violence sufficient to support the finding, then under the decision in Long v. State, the verdict is not contrary to the law and evidence. What violence is proved? The prosecutor was seized, shoved and held against the wall, and threatened to be taken to jail, and this money was extorted from him. True, he did say he paid it to keep from going to jail and he did not want to be bothered. But the jury might well have concluded, that whilst the

fear of the jail did not enter into the reason of his delivery of the money, the violence of the defendant, the seizure by the collar and pressing him against the wall, contributed largely to it, and made a considerable part of that bother in which the poor country darkey was involved when in the clutches of these town sharks. While the mere arrest of him with the threat to take him to jail would not suffice alone to make a case of robbery, yet accompanied by this ill-usage and violence of seizure, pushing and holding, it does, according to Long v. State, make such a case." And see Williams v. State, 51 Neb., 711.

Now, what are the facts of this case as bearing on the question of violence? It will be taken for granted that the appellant and Finley had a right to arrest prosecutor for drunkenness on the streets of Denison, and they had a right to take him to jail. And it may be conceded they had a right to search him for weapons or instruments he might use in accomplishing an escape. It may be doubtful, however, if the prisoner objects, or without consent, an officer has any right to take from a prisoner valuables which are not weapons, or may not be used in accomplishing an escape. Still, conceding that they had this right to take from the prosecutor his money, for the purpose of keeping it in safe custody against the time when he might be enlarged, if they had the intent at the time they found any money or valuables on him to take it, and they used force to make the search, then we understand they cannot avail themselves of the right to search in order to defeat the prosecution. They took the prisoner in hand after they got him in jail. They did not ask him to consent to be searched. According to the testimony, they rudely backed him up against the wall and held his hands up, while one of them thrust his hands into his pocket, and extracted his money. Was this sufficient force? We hold, under the authorities above cited, that it was. No consent was given to the search. In order to make the search effective, they forced him against the wall, used violence in holding his hands above his head against the wall, and then took his money. Did they have the present intent to appropriate it to their own use when they took it? The evidence shows that almost immediately they deposited the whisky and 55 cents in coin which they got from the prosecutor, with the jailer, but they kept the $38 in currency. If there was violence, in a case of this character the law will not closely scrutinize the degree. Here two guardians of the public welfare, peace officers, take a prisoner in charge. He is powerless, and he knows it. The least effort to foil them, he is aware will call for the use of greater force and violence, and undoubtedly his apparent acquiescence under the circumstances· was superinduced by his surroundings. As was said in Bussy's case, supra, "Whilst this court will rule the law as it understands it, it will not strain it one jot or title, to shield the perpetrator of such an outrage."

Appellant assigns as error the action of the court in its charge to the jury and in refusing to give a number of special requested instructions. We have examined the charge of the court, and it is in

accordance with the principles hereinbefore discussed; and in so far as the special charges asked announce the same principles they were not called for. Special charges which contravened the principles con-. tained in the charge and which have been heretofore discussed in this opinion, were not the law; and the court did not err in refusing to give them.

Appellant excepted to the court receiving in evidence a written .memorandum preserved by Rich at the time he gave the currency bills to prosecutor, of the numbers and denominations of said bills. The witness used this memorandum. He stated he took it at the time, and that it was correct. We do not believe there was any error in the ad- mission of this memorandum under the circumstances in which it was done. However, aside from this, the bills were abundantly identified as those taken from the prosecutor. The admission of the paper, if erroneous, would not constitute reversible error.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]