**Winton Lee WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46816.**

Court of Criminal Appeals of Texas.

June 12, 1974.

Rehearing Denied July 17, 1974.

Buddy Stevens, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brought, Stu Stewart, Asst. Dist. Attys., Houston, and Jim Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for possession of marihuana. Trial was before the court upon a plea of not guilty. Punishment was assessed at three years, probated.

At the outset, appellant contends the court erred in admitting evidence which was the fruit of an unreasonable search.

Officer Brooks testified he stopped appellant for running a red light at Montrose and Westheimer in Houston on the night of November 19, 1971. Before appellant's vehicle came to a complete stop, Brooks observed "he made a move with his right hand to between the two (2) seats." After appellant came to a stop Brooks asked appellant "to step out to the rear of the car where my partner was." Brooks searched appellant's car and found a cigarette box containing three hand rolled cigarettes between the bucket seats of the two-door Mustang automobile. The cigarettes were later turned over to the police lab department.

According to Brooks, the search was conducted while appellant "was standing with my partner behind his car there, between his car and the patrol car."

Brooks was the only witness to testify at the guilt stage of the trial and the record reflects that the following occurred at the conclusion of his testimony:

"Mr. Stewart [prosecutor]: We have a stipulation between counsel for the Defendant and myself that the material found there was marijuana.

"Mr. Stevens [counsel for appellant]: We will stipulate that the stuff turned over to the chemist was marijuana, however, we will certainly object to the introduction of it in evidence.

"The Court: Based upon an unlawful search and seizure?

"Mr. Stevens: Yes, Your Honor, based on an unlawful search and seizure and based under this Defendant's rights guaranteed him under the 14th Amendment of the United States Constitution.

"The Court: It is overruled."

In light of the foregoing stipulation, we find no merit in the State's argument that appellant's contention of illegal search is without merit in that the contraband was never introduced into evidence. Further, we do not find that Satillan v. State, Tex.Cr.App., 470 S.W.2d 677 supports the State's position that appellant failed to timely object to any claimed inadmissible evidence. The first evidence of marihuana being found in appellant's car came in the stipulation in which appellant clearly voiced his objection to its admissibility. The appellant complied with the rules which require that objections to the introduction of evidence be made at the time the evidence is offered. Brazzell v. State, Tex.Cr.App., 481 S.W.2d 130; Satillan v. State, supra.

It is not contended that the initial stopping of the vehicle for the traffic violation is illegal, but appellant urges that the

search of his automobile which followed was unreasonable. Clearly, the search of the vehicle in the instant case cannot be tied to the traffic charge,[1] but must be bottomed on additional facts which give rise to probable cause for the warrantless search of appellant's car. Taylor v. State, Tex.Cr.App., 421 S.W.2d 403.

■ Brooks testified that after appellant stopped he "approached the car and asked him to step out." Brooks was asked if he could see the cigarette box in appellant's car and responded, "No, I did not." Unlike Taylor v. State, Tex.Cr.App., 421 S.W.2d 403; Abbott v. State, Tex.Cr.App., 472 S.W.2d 142; Aldridge v. State, Tex.Cr.App., 482 S.W.2d 171, the officer did not see evidence of a criminal violation in plain view which would justify a search of the vehicle.

Brooks testified that he was not in fear of his life at the time he conducted the search; that appellant was standing between his car and the patrol car with Brooks' partner. Unlike Imhoff v. State, Tex.Cr.App., 494 S.W.2d 919, appellant was not sufficiently close to his vehicle that he could have conceivably lunged for a weapon, thereby justifying a search of the vehicle. See Lewis v. State, Tex.Cr. App., 490 S.W.2d 846; Madeley v. State, Tex.Cr.App., 488 S.W.2d 416.

Thus, the question becomes one of whether the officer's observation of appellant before he brought his vehicle to a stop, "he made a move with his right hand to between the two (2) seats," standing alone, is sufficient to establish probable cause for a warrantless search of appellant's automobile.

In People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449, the Supreme Court of Califor-

nia (December 30, 1970), held that officer who observed bending movement of passenger in automobile being chased for traffic violation lacked probable cause for warrantless search of vehicle.

In a well reasoned opinion in which it was first noted that the officer had no prior reliable information that defendant's car contained contraband nor was the officer able to see any contraband in plain view while standing outside the vehicle, Justice Mosk, speaking for the Supreme Court of California, said:

"The next group of relevant cases are those in which probable cause to search has been predicated on 'furtive gestures' or 'furtive movements' of an occupant of the vehicle. The theory, of course, is that although the officer does not actually see any contraband from outside the vehicle, he may reasonably infer from the timing and direction of the occupant's movements that the latter is in fact in possession of contraband which he is endeavoring to hide. From the viewpoint of the actor, the theory rests on a sound psychological basis: 'It is a natural impulse on confrontation to hide immediately any contraband' . . . We can posit that sudden efforts at concealment, like flight from the scene of a crime, may well be expressions of consciousness of guilt. On the other hand, the same motion may in fact have an entirely innocuous purpose: 'It is recognized that a person's reasons for concealment may run the whole spectrum from the most legitimate motives to the most heinous' . . .

"The difficulty is that from the viewpoint of the observer, an innocent gesture can often be mistaken for a guilty movement. . . . The potential for misunderstanding in such a situation is obvious.

1. We do not find the recent holding of the United States Supreme Court in Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed. 2d 456 (1973) to be applicable to the facts in the instant case. In *Gustafson*, the Supreme Court said: "We hold therefore that upon arresting petitioner for the offense of driving his automobile without a valid operator's license, and taking him into custody, Smith was entitled to make a full search of *petitioner's person* incident to that lawful arrest." (emphasis supplied.)

"It is because of this danger that the law requires more than a mere 'furtive gesture' to constitute probable cause to search or to arrest. The United States Supreme Court recently reaffirmed this rule in the case of Sibron v. New York (1968) 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917: 'deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. ' . . . That knowledge, of course, may be derived from the usual twin sources of information and observation; stating the rule for California, the court in People v. Tyler (1961) 193 Cal. App.2d 728, 732, 14 Cal.Rptr. 610, 612, declared: 'As it is the information known to the police officers or the suspicious circumstances which turn an ordinary gesture into a furtive one, it is equally clear in this state that in the absence of information or other suspicious circumstances, a furtive gesture alone is not sufficient * * *.' . . .

" . . .

" . . . Reflection will suggest many more innocent than guilty explanations for a motorist's act of 'leaning forward' or 'bending down' in the circumstances at hand.

"To begin with, every motorist knows that the approaching police officer will in all likelihood ask to see his driver's license, and probably also the registration card of the car. The observed movement, therefore, might well be nothing more than the driver's act of reaching for his wallet so as to have his license ready for inspection, or reaching for the steering post or glove compartment to obtain the registration card. And as many women drivers keep their handbag —containing their license and other identification—next to them on the floor or between the seats, a reaching motion in that direction would be no less natural for them.

"Furthermore, every motorist knows that the officer will wish to speak with him, however briefly; simple preparations for that conversation are therefore to be expected. It may be necessary, for example, for the driver to roll down his window. If the radio is playing at the time, the driver or a passenger might lean forward to reduce the volume or turn off the set. If the driver was smoking, he might well reach down to extinguish or store his cigarette in the car's ashtray. And if an occupant of the vehicle was consuming food or beverages, similar movements would probably follow.

"Additionally, many motorists expect to alight from their car, whether voluntarily or upon request, when they are stopped by the police. Again, certain preparations are usually in order: seat belts may have to be unbuckled; passengers may have to remove road maps, packages, folded coats, or infants from their laps; and clothing may have to be adjusted, shoes or hats put on, belts tightened, and outer garments buttoned.

"Finally, when a driver stops his car in a situation in which he knows he may alight from the vehicle, it is both customary and prudent for him to apply his parking brake. . . . Yet in many automobiles the parking brake handle or lever is on or below the dashboard, and the driver is therefore compelled to lean forward or downward in order to apply it.

"Each of the foregoing gestures in some degree resembles—and could reasonably be mistaken for—the movements of a person engaged in secreting contraband inside a car. Yet each is wholly innocent, and has been made at one time or another by virtually every driver or passenger on the roads today. Accord-

ingly, in the language of *Carroll,*[2] such gestures are not 'sufficient in themselves to warrant a man of reasonable caution in the belief that [contraband] was being transported' in the vehicle under observation."

█ In Brown v. State, Tex.Cr.App., 481 S.W.2d 106, this court cited People v. Superior Court of Yolo County, supra, in concluding that the observation of the officer that defendants' shoulders could be seen moving before their vehicle was stopped was an insufficient basis for inferring that defendants were concealing firearms and did not constitute probable cause for search of their car. In *Brown,* as in the instant case, a search of the vehicle revealed contraband. It is a well established rule of law that a search cannot be justified by what it uncovers, e. g., Whiteley v. Warden, Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Sibron v. New York, supra.

█ In the instant case, the officer observed appellant making a movement before his vehicle was brought to a stop for a traffic violation. This observation was neither coupled with reliable information nor suspicious circumstances which would give rise to probable cause to search of the vehicle. We conclude that the arresting officer's observation of appellant, standing alone, did not constitute probable cause to conduct a warrantless search of appellant's car.

For the reasons stated, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge (dissenting).

This is an appeal from a conviction for the possession of marihuana. After a trial before the court, punishment was assessed at three years, probated.

Along with the claim of insufficiency of the evidence, appellant contends that the search of his automobile was illegal and the fact that an officer found the marihuana was inadmissible.

P. A. Brooks, an officer of the Houston Police Department, testified that at 10:35 p. m. appellant drove his Mustang automobile through a red light at Montrose and Westheimer Streets. With the lights on the police car flashing, Brooks and his partner, J. D. Williams, pursued appellant for some four blocks and stopped him for running the red light. Appellant was the only one in the Mustang. Before appellant's car came to a complete stop, he made a move with his right hand in between the two seats. His head and shoulders also moved to the right. After the car stopped, Brooks had appellant step to the rear of the car with Officer Williams. Brooks then looked between the two seats at the "hump" on the car and found a Marlboro cigarette box which had three Marlboro and three hand rolled cigarettes. It was stipulated that the hand rolled cigarettes were marihuana. The evidence is sufficient to support the conviction.

The State contends that the evidence of the search came in without an objection and that appellant has presented nothing for review. Officer Brooks testified without objection, on direct examination, that he found the cigarette box including the hand rolled cigarettes. He also testified that he had an opinion as to what the hand rolled cigarettes were.

On cross-examination, he stated that he had found marihuana in Marlboro cigarette boxes before, but that he was not looking for marihuana. When asked why he picked up the Marlboro box, he stated, "there could have been a pistol under there." Then appellant's counsel stipulated "that the stuff turned over to the chemist was marihuana, however, we will object to the introduction of it into evidence."

The court ascertained that his objection was based upon an unlawful search and

2. Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 289, 69 L.Ed. 543.

seizure and then overruled it. The marihuana was never actually introduced.

Assuming, without deciding, that the objection was timely and sufficient, the question of the search will be discussed.

The Supreme Court of the United States upheld the search of a person after an arrest for a traffic violation based upon probable cause that Robinson was violating a traffic regulation of the District of Columbia in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The Court wrote:

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."

Prior to the Supreme Court decision, the Court of Appeals for the District of Columbia in United States v. Robinson, 153 U.S.App.D.C. 114, 471 F.2d 1082 (1973), had held the same search was unreasonable. The Court of Appeals noted that there was no suggestion that a wadded up cigarette package in Robinson's pocket was believed to be a weapon or that the officer believed himself to be in danger. The officer in that case, according to the Circuit Court opinion, did not have any specific purpose in mind when he made the search. "I just searched him. I didn't think about what I was looking for. I just searched him." The wadded up cigarette package contained heroin. The Circuit Court held that "Officer Jenks exceeded the permissible scope of a limited frisk for weapons," and stated that a search after an arrest for a mere motor vehicle regulation was illegal. The Supreme Court held otherwise.

In Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court of the United States upheld a search of one who was arrested for not having a driver's license. Gustafson was convicted for the possession of marihuana. After observing an automobile being driven or weaving across the center line of a road several times, officers followed and stopped it. Gustafson, the driver, was un-

able to produce an operator's license and was arrested. The Supreme Court wrote:

"Though the officer here was not required to take the petitioner into custody by police regulations as he was in Robinson, and there did not exist a departmental policy establishing the conditions under which a full scale body search should be conducted, we do not find these differences determinative of the constitutional issue . . . . 'The authority to search a person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.'" (Emphasis Supplied)

The Supreme Court held that there was probable cause for the arrest in the Robinson case. There Officer Jenks learned that Robinson did not have a valid license to operate an automobile. When the officer later saw him driving, the arrest was authorized.

The statutes of Texas authorize the arrest by an officer of one seen committing a traffic offense. That is sufficient cause. The statutes also provide for taking one in custody with one exception for speeding offenses noted later. It takes no stretch of the imagination to see that such an arrest is a custodial arrest.

The Uniform Act Regulating Traffic on Highways, Article 6701d, Section 153, Vernon's Ann.Civ.St., provides:

"Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

Section 148(a) of the same Article provides:

"Whenever a person is arrested for any violation of this Act punishable as a misdemeanor, and such person is not im-

mediately taken before a magistrate as hereinbefore required, the arresting officer shall prepare in duplicate written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, the offense charged, and the time and place when and where such person shall appear in court. *Provided, however, that the offense of speeding shall be the only offense making mandatory the issuance of a written notice to appear in court, and only then if the arrested person gives his written promise to appear in court, by signing in duplicate the written notice prepared by the arresting officer;* and provided further, that it shall not be mandatory for an officer to give a written notice to appear in court to any person arrested for the offense of speeding when such person is operating a vehicle licensed in a state or country other than the State of Texas or who is a resident of a state or country other than the State of Texas." (Emphasis supplied)

Article 14.05, Vernon's Ann.C.C.P., provides:

"In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant."

Article 14.06, Vernon's Ann.C.C.P., provides:

"In each case enumerated in this Code, the person making the arrest shall take the person arrested or have him taken without unnecessary delay before the magistrate who may have ordered the arrest or before some magistrate of the county where the arrest was made without an order. . . ."

Since the proof shows that the appellant was violating Article 6701d, supra, the officers had a right to arrest and take appellant into custody as authorized by Section 153 of the Act. In Wallace v. State, 467 S.W.2d 608, this Court wrote:

". . . it is well settled that when an officer sees a person violating a traffic law, he is authorized to stop him and incident to that arrest to search his person. Ciulla v. State, 434 S.W.2d 948 (Tex.Civ.App.). . . ."

See Rodgers v. State, Tex.Cr.App., 468 S.W.2d 438, and Taylor v. State, Tex.Cr. App., 421 S.W.2d 403, where the trunk of an automobile was searched upon probable cause after the defendant was in jail, following a traffic arrest.

The arrest of the appellant being legal, the question now turns to the search of the car. Does an officer, after making an arrest for a traffic violation, have the right to search that part of a car where the arrested person might readily reach a gun if he is permitted to re-enter?

If an officer stops and arrests the driver of a car for a traffic violation, he has a right to search the driver and take any weapon that the driver might reach. If the driver is seated in the car, a search for any weapon that might be readily obtained would be permissible under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969).

An officer making a traffic arrest is using good judgment to have a driver who has been stopped or arrested for a traffic offense get out of the car as a safety precaution. See Grego v. State, Tex.Cr.App., 456 S.W.2d 123.

At first blush, it might appear that an officer should not be permitted to search one's person or car after a traffic arrest because traffic violations are ordinarily innocuous offenses. Article 6701d, Section 153, supra, gives an officer the right to arrest for such offenses. The Supreme Court of the United States has held the right to search the person of the traffic violator is not unreasonable in the Robinson and Gustafson cases.

Merely because a driver gets out of a car upon being stopped should not prevent an officer from protecting himself. If an officer decides not to take a traffic violator before a magistrate or to jail, the offender will get back into the car and it is quite possible that a weapon could be reached, and the officer could be shot.[1]

No citizen wants to be searched after being stopped or arrested for a traffic violation. We cannot overlook the necessity for such a search. Police officers must be able to protect themselves while in the performance of their duties.

Our Legislature has provided for such arrests and the Supreme Court of the United States has upheld arrests and searches for traffic violations with good reason. A fugitive from a murder, robbery, burglary, or any other crime, who might not want an officer to check to see if he is wanted for some offense, could obtain a gun after returning to his car and attempt to shoot the officer who had stopped him.

In the recent case of People v. Cannon, Ill.App.Ct., First Dist. 1974, 310 N.E.2d 673, a car was stopped because the brake lights were out. When the driver could not produce a license, the officer asked him to get out of the car. Passengers were also asked to get out of the car. After searching Cannon, the officer found a .38 caliber pistol under the seat. Another pistol was found in the search. The Illinois court cited Chimel v. California, supra, in upholding the search of the automobile by the officer after the traffic arrest and wrote:

". . . it then became the right and 'duty of the officer' to make at least a cursory search of the immediate vicinity of the driver's seat. In our opinion, this type of search was not only authorized by law but it was essential to insure the safety of the arresting officer."

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, the arrest was for vagrancy for the defendant and others who were in a parked car. A search of the trunk of the car at the police station after the occupants of the car were in jail was held to be unreasonable.

Mr. Justice Black, speaking for the Supreme Court, wrote:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons. . . ."

and

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer. . . ."

See Corbitt v. State, Tex.Cr.App., 445 S.W.2d 184, and Taylor v. State, supra. Agnello v. United States, 269 U.S. 20, 29, 46 S.Ct. 4, 5, 70 L.Ed. 145, 148.

In Lane v. State, Tex.Cr.App., 424 S.W.2d 925, cert. denied 392 U.S. 929, 88 S.Ct. 2270, 20 L.Ed.2d 1387, the arrest was for a speeding violation. The conviction was for the possession of a pistol found in the glove compartment at the time of the arrest. This Court held the search to be rea-

---

1. In 1972, according to the information received by the Federal Bureau of Investigation through the uniform crime reporting program in the United States and Puerto Rico, 114 officers were killed. In 1973, 131 officers were killed under the following circumstances:

". . . Thirty officers were slain handling disturbance matters, *twenty-five were killed making traffic stops,* twenty while attempting arrests for crimes other than robbery and burglary, ten investigating suspicious persons, eight in connection with burglary matters, seven met death at the hands of prisoners, three were killed by mentally deranged persons, and one was slain in connection with a civil disorder. One hundred and twenty-four of the one hundred and thirty-one officers were killed through use of firearms. Handguns were used in ninety of the slayings. . . ." (Emphasis supplied)

According to the report of the Texas Department of Public Safety, four officers were killed in Texas in arrests or attempted arrests for traffic violations in 1973.

sonable noting that the search was not based on probable cause but a search incident to a lawful arrest, citing Hardin v. State, Tex.Cr.App., 387 S.W.2d 60.

In Sutton v. State, 157 Tex.Cr.R. 216, 247 S.W.2d 894, 895, this Court wrote:

"There can be no claim that appellant was illegally arrested. The evidence is without dispute that the search was made after the arrest. It is a settled rule that a search warrant is not necessary in order to search the person of one under lawful arrest. 38 Tex.Jur., p. 73; Tones v. State, 48 Tex.Cr.R. 363, 88 S. W. 217, 1 L.R.A.,N.S., 1024, 122 Am. St.Rep. 759, 13 Ann.Cas. 455. Having a right to arrest and search appellant, he also had a right to search the car. Stokes v. State, 117 Tex.Cr.R. 307, 35 S.W.2d 727; Hayes v. State, 115 Tex. Cr.R. 644, 28 S.W.2d 556."

In the present case the officer testified that he was not in fear for his life but stated that there could have been a pistol under the cigarette box. Perhaps he was not in fear of his life because he was making sure that the appellant could not reach a weapon when he returned to the car.

It is good police practice for officers to make a cursory search for weapons in the immediate vicinity of the driver as the Illinois court held in the Cannon case, supra.

To summarize, the statutes of Texas authorize the arrest of an offender of the traffic laws and taking him into custody. This Court has upheld the search of the person after an arrest as well as a limited search of his car. The Supreme Court has upheld the arrest for traffic regulation violators and the search of their persons even though the arresting officer was not in fear of his life. It also recognizes the right of the officer to search in the vicinity of where the arrest has been made.

2. This opinion is not to be understood as permitting a full scale search of an automobile trunk or other places not readily accessible to

The search in the present case is not unreasonable.[2]

The judgment should be affirmed.

MORRISON, Judge (dissenting).

I cannot agree to the reversal of this conviction, but I cannot subscribe to my brother Douglas' reasoning. On the other hand, I do not accept the majority's alignment with People v. Superior Court, supra.

In this case the officer observed a traffic violation other than speeding, plus an overt act of making "a move with his right hand to between the two seats", which I deem sufficient to establish probable cause to search both appellant and the area where the furtive gesture had occurred.

I dissent.

## DISSENTING OPINION IN DENYING LEAVE TO FILE ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The majority denies leave to file a motion for rehearing and still holds the search illegal. What does the majority intend to do with the previous decisions cited in the dissenting opinion that are contrary to the holding in this case?

In addition to those cases, let us look at the decision in Smoot v. State, Tex.Cr. App., 475 S.W.2d 281, in a unanimous opinion by this Court as presently constituted. In that case the arrest was for speeding. In that opinion we find the following:

". . . Upon being directed to pull over, appellant stopped his car and 'made a motion to the floor.' He hurriedly approached the police car and 'seemed excited, nervous.' After getting the appellant's driver's license, the officer went to the driver's side of the car and

a motorist who has been arrested solely for violating a traffic law.

saw on the floor board 'an old rusty hunting knife and a Marlboro box of cigarettes.' He retrieved these articles and found 9 handrolled marihuana cigarettes in the Marlboro box."

and,

"We conclude the arrest and search and seizure were legal."

In the Smoot case the officers had the defendant outside the car and then searched the Marlboro cigarette package and found marihuana cigarettes. In the present case, the officers had Wilson outside the car; they looked into a Marlboro cigarette box and found marihuana cigarettes.

What is the difference? Does the majority rely upon no probable cause to search the cigarette box in the present case? If so, was there probable cause in the Smoot case? Does the majority rely upon protection of the officers in the Smoot case? Smoot was outside the car—so was Wilson in the present case. Does the majority hold no arrest was made in the present case?

Leave to file the State's motion for rehearing should be granted. The judgment should be affirmed.