**Glen BRANCH, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57874.**

Court of Criminal Appeals of Texas, Panel No. 2.

June 6, 1979.

On Rehearing Jan. 16, 1980.

Rehearing Denied June 11, 1980.

Walter M. Sekaly, Harold J. Laine, Jr., Beaumont, for appellant.

Tom Hanna, Dist. Atty., William G. Ogletree, Asst. Dist. Atty., Beaumont, and Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, W. C. DAVIS and DALLY, JJ.

## OPINION

DOUGLAS, Judge.

Glen Branch appeals his conviction for possession with intent to deliver heroin under Vernon's Annotated Civil Statute, Article 4476–15, Section 403. Punishment was assessed by the jury at life.

Branch contends that heroin seized from his car was the product of an illegal search. If the heroin is admissible, he contends that the evidence was insufficient to prove his intent to deliver the heroin.

Officers Terry Dunahoe and Steve Conroy of the Port Arthur Police Department were on patrol during the afternoon of August 7, 1976. They observed a car driven by Branch traveling at an excessive rate of speed. They followed Branch until they were able to determine he was traveling at over forty miles per hour in a thirty mile zone. At this point, Dunahoe thought the driver might be Glen Branch who was suspected of selling heroin. Branch was thought to be armed. Dunahoe beeped his horn at Branch's car but Branch did not pull over. Dunahoe turned the sirens on. Branch then "rolled" through a stop sign and stopped his car. Dunahoe and Conroy observed Branch bend over towards the passenger seat or glove compartment area. Dunahoe approached Branch, ordered him out of the car and had him place his hands on the back of the car. Dunahoe then searched Branch's glove compartment and the area under the passenger seat. He found nothing and exited the vehicle. After he shut the driver's door, he noticed a tin foil packet that appeared to be heroin. He seized the packet and attempted to place Branch under arrest for possession of heroin. Branch struggled but was soon subdued. A subsequent search of Branch's vehicle revealed a large quantity of heroin hidden in various places including under the hood near the battery and under the front fender. Five packets were found in a glove on the floor. Also, the search revealed a syringe and a bag containing $5,725.14 in small bills. Branch had another $2,034.30 on his person. The total amount of heroin seized was enough for 2,864 doses.

Branch contends that the search of his car was unlawful. Vernon's Annotated Civil Statutes, Article 6701d, Section 153, provides that an officer may arrest a motorist for a traffic violation. Once an arrest is made, a search may be made of the area within the arrestee's immediate control. *Taylor v. State*, 421 S.W.2d 403 (Tex.Cr. App.1967). Thus, in *Imhoff v. State*, 494 S.W.2d 919 (Tex.Cr.App.1973), after officers observed Imhoff make movements as if he were concealing something under the front seat, they ordered all of the passengers from the car. We held that their subsequent search of the area under the seat was a lawful search incident to the arrest.

In the instant case, the officers observed Branch speeding and running a stop sign. This gave them the authority to arrest pursuant to Section 153. Upon arresting Branch, Officer Conroy conducted a search of the area under appellant's immediate control; the search revealed nothing. After completing the search, Conroy exited the car and closed the door. It was then that he observed a small packet of heroin, in plain view, on the front seat. Given the circumstances of the case, the officers' actions were reasonable and the heroin was lawfully seized.

Branch next contends that the evidence was insufficient to prove his intent to deliver the heroin. There is no statutory presumption regarding the evidence to prove possession with intent to deliver. We have not previously considered what constitutes sufficient evidence to prove the intent to deliver.

Other jurisdictions have generally concluded that evidence of large quantities of a controlled substance or evidence of large quantities coupled with other factors such as packaging material is sufficient to support an inference that the possession was with intent to deliver. E. g., *United States v. Johnson*, 469 F.2d 973 (5th Cir. 1973); *State v. Boyd*, 224 N.W.2d 609 (Iowa, 1974). Thus, other courts have upheld convictions for possession with intent to deliver based on the following factors: 133 pounds of marihuana, *United States v. Johnson*, supra; 33 pounds of marihuana, two scales, and testimony that marihuana was packaged in a manner in which it was normally sold, *State v. Boyd*, supra; enough marihuana to make 600 cigarettes, *State v. Sibley*, 310 So.2d 100 (La.1975); 15 pounds of marihuana, two scales and plastic baggies,

*Daygee v. State*, 514 P.2d 1159 (Alaska, 1973); and slightly less than one pound of marihuana packaged in "lid" quantities, *State v. Sullivan*, 190 Neb. 621, 211 N.W.2d 125 (1975).

In the instant case, Branch was in possession of enough heroin to make 2,864 "hits." The heroin was secreted in various places through his vehicle. Some of it was packaged in small quantities. Branch, both on his person and in a paper bag, had nearly $8,000 in small bills. The only reasonable explanation for these facts is that Branch was actively engaged in the business of selling heroin. The evidence is sufficient.

There is no reversible error; the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission, a panel opinion overruled appellant's contention that heroin seized from his vehicle following a legitimate traffic stop was the product of an illegal search and hence inadmissible. The panel viewed the search of the vehicle as one made incident to a lawful arrest and cited *Taylor v. State*, 421 S.W.2d 403 (Tex. Cr.App.1967) and *Imhoff v. State*, 494 S.W.2d 919 (Tex.Cr.App.1973) in support. In his motion for rehearing appellant stoutly contends that the search was not incident to arrest, arguing:

" . . . The Appellant was at the rear of his pick up [sic] with his hands on the vehicle. The officers were presented with a valid, unexpired drivers [sic] license. The detention and investigation should have concluded at that time. . ."

We granted leave to file in order to consider fully the contention and argument. For reasons about to be stated appellant's motion for rehearing will be granted and the judgment reversed.

As pointed out in the panel opinion, the officers had sufficient probable cause to authorize the initial stop of appellant's vehicle given their belief that appellant was speeding and, additionally, that he "rolled" through a stop sign. See V.A.T.S., Article 6701d, § 153. *Beck v. State*, 547 S.W.2d 266 (Tex.Cr.App.1976); *Tores v. State*, 518 S.W.2d 378 (Tex.Cr.App.1975) (running a stop sign held to authorize arrest); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974) (running a red light). While this Court continues to revisit the doctrine of *Taylor v. State*, 421 S.W.2d 403 (Tex.Cr.App.1967), see, e. g., *Duncantell v. State*, 563 S.W.2d 252 (Tex.Cr.App.1978), it has examined each individual fact situation to determine that every movement made by an officer following a legitimate traffic stop is justified in fact and law, for the Supreme Court of the United States has not yet applied the "stop and frisk" principle to a moving motor vehicle. Indeed, the Supreme Court has only recently noted that citizens are not shorn of their rights under the Fourth Amendment "when they step from the sidewalks into their automobiles." *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391 at 1401, 59 L.Ed.2d 660 (1979).

Officer Dunahoe conducted a frontal area search of appellant's vehicle *after* appellant had been safely removed to the rear of his vehicle, and placed in Officer Conroy's charge. Officer Dunahoe noted that appellant did not have a weapon in his hands after he exited his vehicle and that his clothing and appearance did not evidence any showing that appellant was carrying a concealed weapon. Indeed, neither officer even bothered to frisk appellant notwithstanding their testimony that they were in fear of their safety at the time appellant was stepping from his own vehicle. Regardless, both officers now had appellant secured at the rear of the latter's vehicle where appellant produced a valid Texas operator's license, Dunahoe determined there were not outstanding warrants for him and appellant placed his hands, at the officers' request, back on the rear fender of his vehicle. Though either officer had the unqualified right at that juncture to effect a body search of the appellant, *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), as noted above, they chose not to. What, then, brought Officer Dunahoe back from their secure location to

the door of appellant's vehicle and impelled him to open it and then conduct a search of the front interior?

Contrary to the surmise of the panel opinion that Dunahoe was conducting "a search of the area under appellant's immediate control," Dunahoe testified in response to a question put by the prosecutor:

"Q. Why did you go over to the vehicle?

A. To search for a weapon to make sure that if we did cut him loose after writing him a ticket he didn't get it or use it on us or possibly somebody else that may have been stopping him down the street."

An almost identical rationale suggested in the dissenting opinion in *Beck v. State, supra,* at 269,[1] was necessarily rejected by a majority of the Court then—just as it was earlier in *Wilson v. State,* 511 S.W.2d 531, 538[2] (Tex.Cr.App.1974).

Moreover, the quoted testimony of Dunahoe brings our fact situation within the doctrine of *Thomas v. State,* 572 S.W.2d 507, 509 (Tex.Cr.App.1978) so that the search was not incident to arrest.

In any event, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) controls disposition of this case. With appellant detained by Conroy at the rear of his vehicle, the area of its front interior was simply not within his immediate control. *Beck* and *Wilson, supra.*

Appellant's motion for rehearing is granted, his first two grounds of error are now sustained and the judgment of conviction is reversed and the cause is remanded.

Before the court en banc.

## ON STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority, on appellant's motion for rehearing, reversed this case and in doing so overlooked a critical fact. The contraband was not found as a result of a search.

After Officer Dunahoe searched the interior of Branch's car, including the glove compartment, he got out of the car, having found *no contraband* whatsoever. It was only after Dunahoe had shut the car door and was standing outside the car that he saw, in plain view, the tin foil packet that appeared to be a container for heroin. Regardless of the constitutional infirmities attributed by the majority to Dunahoe's initial search, there was simply no evidence seized in that search that can be the subject of suppression.

It is an elementary principle of Fourth Amendment analysis that only evidence seized by unconstitutional means is subject to exclusion. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In *Silverthorne Lumber Company v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the Supreme Court stated the policy behind the exclusionary rule:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. *If knowledge of them is gained from an independent source,* they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be urged by it in the way proposed." 251 U.S. at 392, 40 S.Ct. at 183. (Emphasis supplied).

In *McCall v. State,* 540 S.W.2d 717 (Tex. Cr.App.1976), we held that a search means "a quest for, a looking for, or a seeking out of that which offends against the law." It

---

1. The officer who searched a glove box there testified that "... if he had placed a weapon in here, then after the search we'd leave, he could have gone back to the box, retrieved whatever he placed there and done whatever harm he had on his mind if he had any" and that, accordingly, in searching the officer was looking out for his own protection.

2. "Merely because a driver gets out of a car upon being stopped should not prevent an officer from protecting himself. If an officer decides not to take a traffic violator before a magistrate or to jail, the offender will get back into the car and it is quite possible that a weapon could be reached, and the officer could be shot."

is "a prying into hidden places for that which is concealed." To observe contraband in plain view is not a search. See also *Sherer v. State*, 502 S.W.2d 143 (Tex.Cr. App.1973); *Coleman v. State*, 500 S.W.2d 472 (Tex.Cr.App.1973). In the present case, the tin foil packet of heroin was not discovered until Officer Dunahoe had removed himself from the car and shut the door. The packet was on the front seat of Branch's car in plain view. It is irrelevant to ask, as does the majority, what "brought Officer Dunahoe back from their (sic) location to the door of appellant's vehicle and impelled him to open it and then conduct a search of the front interior." When Dunahoe discovered the packet, he was where he had a right to be.

There is no error. The judgment should be affirmed.