**UNITED STATES of America,**
**Plaintiff,**

v.

**William Edward CLARK, Defendant.**
**Crim. No. 272.**

United States District Court
D. Montana,
Billings Division.
Dec. 29, 1964.

---

Moody Brickett, U. S. Atty., Butte, Mont., and Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Howard C. Foreman, Billings, Mont., for defendant.

JAMESON, District Judge.

The defendant has moved in the alternative for a new trial or judgment of acquittal.

In support of the motion for new trial, it is urged that the court erred in overruling the defendant's motion for the return of seized property and the suppression of evidence, in overruling the defendant's motion for discovery and inspection, and in overruling the defendant's objections to the testimony of the witnesses Vanover, Talbot, and Olson.

Defendant first attacks the validity of his arrest by the witness Vanover, a police officer of the City of Billings.

As the Supreme Court said in the recent case of Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. U. S., 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]."

In the absence of an applicable federal statute, the law of the state where an arrest takes place determines its validity. United States v. Di Re, 1948, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210; Burks v. United States, 9 Cir. 1961, 287 F.2d 117, 122.

Section 94–6003, R.C.M. 1947, reads in pertinent part:

> "Arrests by Peace Officers. A peace officer * * * may, without a warrant, arrest a person—

1. For a public offense committed or attempted in his presence"

\* \* \*

The Montana court has held that the proper construction of this statute "when applied to an officer, is that the facts and circumstances must be such that upon them alone he would be justified in making a complaint upon which a warrant might issue; in other words, the facts and circumstances must be sufficient to justify the conclusion of the officer that there is probable cause for the belief that an offense is being committed in his presence; and in that case the term 'probable cause' is defined as 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of'.

\* \* \*

An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances, or credible information calculated to produce such suspicion or belief \* \* \*." State ex rel. Sadler v. District Court et al., 1924, 70 Mont. 378, 387, 225 P. 1000, 1002.

Essentially the same test was applied in Burks v. United States, supra, in construing an identical California statute, the court saying in part: "What is required are circumstances represented to the officers through the testimony of their senses sufficient to justify them in a good faith belief that the defendant is violating the law." (Citing cases).

Vanover testified that he arrested the defendant for "failure to yield the right of way to another oncoming vehicle, and no valid driver's license". He testified that he was riding a motorcycle following a vehicle headed north; that Clark was headed south and made a left hand turn in front of the other car; that the car headed north "was just entering the cross walk, the corner of the intersection"; that the driver had to "slam on the brakes to avoid a collision".

The statutes of Montana and the ordinances of the City of Billings contain identical provisions with respect to a vehicle turning left at an intersection. They read:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn. The provisions of this section shall not be applicable where it is otherwise directed by appropriate signs or signals." (R.C.M. 1947, § 32–2171; Ordinances, City of Billings, § 21–171).

After stopping the defendant, Vanover asked Clark for his driver's license. Clark had no driver's license or other identification; nor did he have any registration papers for the vehicle or other evidence of ownership. He told Vanover that "the last time he saw it would be on the back seat between the window and the back seat, the ledge on the back of the vehicle. It was not there, however".

Clark was taken to the police station to post bond, driving the car and following Vanover on the motorcycle. Clark "parked the car in the rear of the station and went upstairs, and the citation was issued him and booked at that time". This was approximately a half hour after he was first stopped. He did not have money to post bond and was taken into custody.

Vanover testified that he searched and examined the car "in a sense" at the time Clark was stopped and when Clark "was looking for these papers". He attempted at that time to search the trunk of the car, but was unable to do so because Clark did not have any key that fit either the trunk or the ignition. The car was never out of Vanover's view from

the time he stopped Clark until the car was parked at the station.

Vanover testified further that he had made a record of the license number of the car on the citation. After refreshing his recollection from the citation, he gave the license number. He did not get the serial number of the car.

■ The contention that the arrest was invalid is, in my opinion, without merit. When Vanover stopped Clark he had reasonable cause to believe that Clark was violating a statute of the State of Montana and an ordinance of the City of Billings.

Any "search" of the vehicle by Officer Vanover was incidental to a lawful arrest. The rule here applicable was summarized in Taglavore v. United States, 9 Cir. 1961, 291 F.2d 262, 265, as follows:

"Normally one's person or property may not be searched unless the authorities conducting the search have a search warrant which has been issued by a magistrate upon at least a showing of probable cause. Certain well-established exceptions exist to this basic rule. One such exception, within which the Government claims the instant case falls, is that incident to a valid arrest the person arrested may be searched without warrant. Thus where one has been legally arrested for the commission of a crime his person and, in most cases, his immediate surroundings at the time of arrest may be properly searched. The main purpose of this exception is to facilitate discovery of various elements and evidence of the crime for which the accused is being arrested, and also to remove weapons or other instrumentalities which might be used to resist the officers or for escape or similar purposes. If the search happens to uncover evidence of crimes other than the one for which the accused has been arrested, this evidence may also be used against him in prosecutions for the other crimes so discovered. Harris v. United States, 1947, 331 U.S. 145,

67 S.Ct. 1098, 91 L.Ed. 1399. Certain decisions even indicate that the arresting officers may deliberately look for evidence of other crimes in addition to that for which the arrest is being made. Charles v. United States, 9 Cir., 1960, 278 F.2d 386. However, there is one fixed and essential prerequisite to all of these searches: in each case there must be a valid, bona-fide arrest to which the search is merely incident. Where the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal."

Defendant relies heavily on Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. In that case petitioner and two companions, who had been seated for several hours in a parked car, were arrested by the police for vagrancy, searched for weapons, and taken to the police station. Police officers had interrogated the men at the time of arrest. "One of the men said that he had bought the car the day before (which later turned out to be true), but he could not prodce any title * * * The car, which had not been searched at the time of the arrest, was driven by an officer to the station, from which it was towed to a garage. Soon after the men had been booked at the station, some of the police officers went to the garage to search the car and found two loaded revolvers in the glove compartment. They were unable to open the trunk and returned to the station, where a detective told one of the officers to go back and try to get into the trunk. The officer did so, was able to enter the trunk through the back seat of the car, and in the trunk found caps, women's stockings (one with mouth and eye holes), rope, pillow slips, and illegally manufactured license plate equipped to be snapped over another plate, and other items."

The articles found in the car were later turned over to federal authorities and used as evidence in a trial in federal court resulting in petitioner's conviction of conspiracy to rob a federally insured bank.

The court held "that the search was too remote in time or place to have been made as incidental to the arrest" and concluded "therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible".

In the instant case, aside from the search for title and registration papers at the time of the initial arrest, there was no search of the inside of the car by Vanover. From his observation at the time of arrest he obtained a description of the vehicle and the license number. On the basis of this information and telephonic inquiry of the Des Moines Police Department, it was learned that the motor vehicle had been reported as stolen.

It is true that thereafter Lawrence Talbot, an FBI Agent, also inspected the vehicle and obtained the serial number. This is not a case, however, where in searching a motor vehicle, guns, burglary tools or narcotics are found within the car, and the articles found form a basis for a charge of violating a federal statute. Here it was simply a matter of further identification of the car itself.

Defendant in his testimony did not dispute the identity of the vehicle or claim that he was charged with transporting the wrong car. He admitted the interstate transportation. His sole defense was that he had purchased the car and was its owner. In a written statement to agent Talbot, received in evidence without objection, the defendant admitted that he was driving a "1960 Buick, 4-door LeSabre, blue in color" and claimed to have purchased the vehicle. His testimony on the stand was to the same effect.

In the Information the vehicle was described as a 1960 4-door LeSabre Sedan, giving both the serial and Iowa license numbers. There was received in evidence a certificate of title issued to Higgins Ford Sales, Inc., on September 3, 1964, giving the same description. It was clear from the testimony that the vehicle had been stolen.

■ The evidence would have been sufficient to sustain a conviction without Talbot's testimony regarding the serial number. While in my opinion this evidence was properly received, if there were error, the error was harmless. F.R. Crim.P. 52(a).

■ Defendant complains further that he was not allowed to inspect the automobile subsequent to his arrest. The car was returned to Iowa on September 7 or 8. Counsel for the defendant was appointed September 8. This case is clearly distinguishable from those upon which defendant relies, where the government failed to produce documentary evidence which had been in its possession, as in United States v. Consolidated Laundries Corp., 2 Cir. 1961, 291 F.2d 563, and United States v. Heath, 9 Cir. 1958, 260 F.2d 623.

Defendant here made no motion in advance of trial under Rule 16, but submitted his motion during the course of the trial. In any event, as stated supra, the identity of the automobile was not in dispute. The sole defense was defendant's claim of ownership. He was not prejudiced by his inability to check further on the license and serial numbers.

■ As noted supra, the witness Vanover was permitted to refresh his recollection from the citation he issued in order to testify regarding the license number on the vehicle. This was proper. See United States v. Wheeler, 7 Cir. 1955, 219 F.2d 773. Defendant could have demanded to see the paper used by the witness in refreshing his recollection. Had such demand been made, the court would have required its production. No request was made for its production.

Certainly counsel for the defendant is not to be criticized for his failure to demand production of the citation. No doubt he concluded that the defendant would be in a better position to claim error by reason of the government's failure to put the citation in evidence. In fact, throughout the trial and motions subsequent to trial, the defendant's court-appointed counsel has shown commenda-

ble zeal in protecting all rights of the defendant. The court desires to record its thanks to Mr. Foreman for his careful and competent representation of the defendant at all stages of the proceedings.

The evidence clearly sustains defendant's conviction. The facts in Keyes v. United States, 9 Cir. 1963, 314 F.2d 119 were quite similar, and the court held there was "ample evidence" to support the verdict of guilty.

The defendant's motion is denied.