Ovide DUNCANTELL, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51749.

Court of Criminal Appeals of Texas,
En Banc.

March 15, 1978.

Rehearing Denied April 5, 1978.

Peter D. Williamson, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Alvin M. Titus and Jack Bodiford, Asst. Dist. Attys., Houston, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for possession of marihuana. The jury assessed punishment at seven years, probated.

At approximately three o'clock in the morning of November 12, 1971, Houston Police Officers Miller and Trumble observed appellant's automobile slowly ꞌenter Dowling Street. Appellant was driving with his lights off although it was dark. Subsequently, he turned the lights on and accelerated to an excessive rate of speed. He was eventually clocked at 47 miles per hour in a thirty miles per hour zone.

The officers were forced to pursue appellant for several blocks before he stopped. As Trumble approached appellant's automobile, appellant became angry and abusive and demanded to know why he was stopped. The automobile then "started to proceed forward from a dead stop" whereupon the officer removed the ignition key from appellant's car. Appellant then struck Trumble on the head.

Both officers opened the car door and told appellant that he was under arrest. When he refused to get out of the car they pulled him out. A brief struggle ensued but the officers were able to wrestle appellant to the ground and place handcuffs on him.

Several other officers then arrived to give assistance in response to a call made by Trumble during the struggle. Miller asked Officer Bell to search the car. Bell testified that he was looking for "weapons or evidence." He found several matchboxes on the dashboard, one of which contained a substance later identified as marihuana.

Appellant testified that he was driving only about twenty-five miles an hour. When he stopped, the officers started cursing and beating him with flashlights. While he was under arrest he told the officers that he was not drunk and that Officer Bell was not coming from the direction of appellant's car when Bell showed appellant what he had found. On cross-examination he testified that Bell must have planted the marihuana on him.

Appellant initially complains of systematic exclusion of blacks from the jury. The thrust of his argument is that the State used its peremptory challenges to strike qualified blacks from the jury panel. The same argument was confronted and rejected in *Ridley v. State*, 475 S.W.2d 769, 772 (Tex.Cr.App.1972), wherein we stated:

"We hold that no systematic exclusion has been shown. To hold otherwise would in effect be abolishing our peremptory challenge practice which has always been a part of our system to help an accused as well as the State obtain an impartial jury and a fair trial."

See also *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

Appellant next contends that the court erroneously admitted evidence of an extraneous offense. He complains of testimony given by two State witnesses that he was under the influence of alcohol when he was arrested and that he was given a breathalyzer test at the police station.

*Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), is contrary to appellant's position. In that case we stated that evidence of extraneous offenses may be admissible "[t]o show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence (footnote omitted). . . . " 486 S.W.2d at 100. See also *Williams v. State*, 535 S.W.2d 637 (Tex.Cr.App.1976).

Next, appellant urges that the court improperly commented on the weight of the evidence. The court commented while Officer Miller was being cross-examined:

"Q. And you are as positive of that as you are of all of the other testimony that you have given up to this point?

"A. Yes, sir.

"Q. And then if you find out that you were not positive about that and you were wrong about that, then your testimony to this jury would be that you are wrong about everything else that you have stated? "THE COURT: That is argumentative."

No objection was made. Thus, nothing is presented for review. *Adams v. State*, 165 Tex.Cr.R. 523, 309 S.W.2d 245 (1958); *Sikes v. State*, 500 S.W.2d 650 (Tex.Cr.App.1973).

■ Appellant contends the court erred in permitting the State to bolster the testimony of Officer Miller.

Miller testified on direct examination that he initially noticed appellant's vehicle because its lights were off. Appellant attacked this testimony on cross-examination by having the officer read from his offense report. That report stated that the officers noticed appellant's vehicle because it pulled onto the street at an excessive rate of speed. The State later introduced into evidence Miller's relevant examining trial testimony as follows:

"Q. Do you remember being asked the question: 'What called your attention to the defendant?'

"A. Yes, sir.

"Q. Would you read your answer?

"A. (Reading) 'We were on routine patrol in that neighborhood, and I approached a station wagon backing onto Dowling Street headed into a southerly direction. The car seemed to halt without turning on his lights, and I did not know if he would turn on his lights or what, so I got in behind the vehicle.'

"Q. Do you remember being asked this question: 'What else called your attention to the vehicle?'

"A. Yes, sir, I do.

"Q. Would you read your answer?

"A. (Reading) 'When we got behind him, he seemed to speed up at a high rate of speed, and I was behind him to obtain a speed clock.'"

The court overruled the objection to the admission of this testimony.

Appellant attempted to impeach the witness by showing he made a prior inconsistent statement and the State then attempted to rehabilitate him by introduction of prior consistent testimony. In *Kepley v. State*, 167 Tex.Cr.R. 233, 320 S.W.2d 143 (1959), this Court held that where an attempt is made to impeach a witness by showing he made statements inconsistent with his trial testimony, he may be supported by showing that he made statements consistent with his trial testimony after the offense in question. See also 1 McCormick and Ray, Evidence, Section 774 (2d Ed. 1956). No error is shown.

Appellant next urges that the search of his automobile was unlawful and that as a result the trial court erred in overruling the motion to suppress evidence.

Appellant argues that neither the traffic offenses nor the assault carried with them fruits or instrumentalities for which there was probable cause to search. Officer Miller testified that he smelled alcohol on appellant's breath after the arrest. Miller observed "slow reaction, slurred speech, slow reaction and movement to the eyes." When asked whether he had formed the opinion that appellant was under the influence of intoxicating liquors, the officer replied only that, in his opinion, appellant was under "a form of intoxication."

It is common knowledge that usage of marihuana, or of a combination of marihuana and alcohol, often results in a form of intoxication. Such usage by appellant on the night of his arrest would explain his slow reactions and slurred speech as well as intoxication by alcohol only would explain them.

■ Therefore, Miller's observation of appellant's intoxicated condition, in conjunction with the evidence of flight and resistance of the arrest, established probable cause to search appellant's automobile for alcohol or narcotics and other contraband. The marihuana found in the matchbox on the dashboard was thus secured as the result of a legal search. Cf. *Attwood v.*

*State*, 509 S.W.2d 342 (Tex.Cr.App.1974); *Cazares v. State*, 488 S.W.2d 455 (Tex.Cr. App.1972). As this Court stated in *Taylor v. State*, 421 S.W.2d 403, 407 (Tex.Cr.App. 1967):

"Once a bona fide stop or arrest has been made for a traffic offense, the police can make an additional arrest for any other offense unexpectedly discovered during the course of the investigation. If, while questioning a motorist regarding the operation of his vehicle, an officer sees evidence of a criminal violation in open view, or *in some other manner acquires probable cause on a more serious charge* he may arrest for that offense and *incident thereto* conduct an additional search for physical evidence. See *Goodwin v. United States*, 121 U.S.App.D.C. 9, 347 F.2d 793; *Busby v. United States*, 9 Cir., 296 F.2d 328; *Riggins v. United States*, D.C.Tex., 255 F.Supp. 777; *United States v. Barnett*, D.C.Tenn., 258 F.Supp. 455; *United States v. Clark*, D.C.Mont., 247 F.Supp. 958. Under these circumstances, neither the arrest nor the search is tied to the traffic charge, but rather to the violation later discovered. *Brown v. United States*, 125 U.S.App.D.C. 43, 365 F.2d 976; *United States v. One Cadillac Hardtop*, D.C.Wis., 224 F.Supp. 210. This is true even if no specific statement of fact of the second arrest is made. *Brown v. United States*, supra." (First emphasis supplied.) See also *Borner v. State*, 521 S.W.2d 852 (Tex.Cr.App.1975).

In the instant case, probable cause to search appellant's automobile developed after he had been arrested for the traffic offenses and the assault. Applying the principle enunciated in *Taylor*, we hold that the trial court did not err in denying the motion to suppress the seized evidence.

■ Appellant next complains of improper cross-examination regarding a post-arrest conversation he had with Lieutenant DeFoor at the police station. Appellant apparently told the lieutenant that he had no complaints regarding his treatment by the arresting officers.

On direct examination appellant testified that he was brutally beaten by the arresting officers. The State attempted to impeach him on cross-examination by showing that he gave a prior inconsistent statement to DeFoor. Such impeachment was proper even though appellant had not been given his *Miranda* warnings before he made the statement in question. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Small v. State*, 466 S.W.2d 281 (Tex.Cr.App.1971). The contention is overruled.

Appellant again complains of improper impeachment.

■ The record shows that Lieutenant DeFoor testified about his conversation with appellant at the police station. According to the officer, appellant told him that Houston Mayor Louie Welch had conspired to have the marihuana planted on him. Appellant's counsel objected to the admissibility of DeFoor's testimony concerning that conversation because appellant's *Miranda* rights were violated. On appeal, appellant contends that DeFoor's testimony constituted improper impeachment. The ground of error presented on appeal must conform to the objection raised at trial. *Cain v. State*, 549 S.W.2d 707 (Tex.Cr.App.1977); *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976). Moreover, appellant made no objection whatsoever to the testimony of Police Inspector W. L. Williams, Police Chief Herman Short, or of Mayor Louie Welch insofar as they denied involvement in any conspiracy to have appellant arrested. Nothing is presented for review.

Appellant's next contention is that the court admitted prejudicial testimony pertaining to a collateral matter. The record reflects:

"Q. (By Mr. Bodiford) Mayor, concerning this statement that the defendant made in your presence before the City Council of Houston, what was the statement that he made?

"A. That for every black who was killed in the streets of Houston, ten pigs would die.

"Q. Do you know who he was referring to when he spoke of pigs?

"A. Police officers.

"Q. That for every black that was killed, ten pigs would be killed. Was that his statement?

"A. That was his statement.

"Q. Did you answer him?

"A. Yes, I think we answered him.

"Q. Do you know what your answer was?

"A. We didn't give much credibility to his threat.

"Q. Would it be advantageous to you at all to have Ovide Duncantell arrested?

"A. Politically, it was about as bad a thing that could have happened at that particular time. There was already—

"MR. CALDWELL: Your Honor, I am going to object to this as being irrelevant and immaterial.

"THE COURT: Yes, I sustain the objection.

"Q. (By Mr. Bodiford) You didn't have any motive, then, for the arrest of Ovide Duncantell?

"A. None whatsoever."

It was developed on cross-examination that appellant had appeared before the Houston City Council several years before to protest the shooting of a sixteen-year-old black male by a white police officer. Welch testified that he thought appellant's statement was "more mouth than anything" and not a serious threat.

■■■ Appellant had previously testified that the arresting officers had beaten him and, after the State first developed the allegation, that the police were involved in a conspiracy to convict him for a crime he did not commit. The State, or any adverse party, may prove declarations of a witness which tend to show bias, interest, prejudice, motive, or any other mental state affecting credibility. 1 McCormick and Ray, Evidence, Sections 670 and 677 (2d Ed. 1956). See also *Parsons v. State*, 102 Tex.Cr.R. 524, 278 S.W. 444, 446 (1926), wherein this Court stated:

"No principle of evidence is more firmly settled than that which recognizes that the interest of a witness and the motive or animus which operates upon his mind is a subject of material inquiry. The receipt of such evidence is obviously to enable the jury to determine the weight to be given to the testimony and the credibility of the witnesses."

The statement in the instant case disclosed appellant's hostility toward the police and a possible motive for alleging a police conspiracy to have him "framed." We hold that the court did not err in admitting the statement into evidence.

■■■ Appellant contends that the prosecutor improperly referred to an extraneous offense during jury argument. The record reflects:

"  .  .  . The testimony before you is that at the time the breathalyzer test was taken the alcoholic content of the defendant's blood was .7. Now, the defendant told you that he had two drinks before he left on his tour at eight o'clock that night, only two drinks before eight o'clock that night. Now, Mr. McDonald, the City chemist, told you that the burnoff rate of alcohol is .2 percent per hour. If he only had two drinks before eight o'clock, with a burn off rate of two percent per hour, there wouldn't have been one indication at all—"

For the reasons previously stated, the evidence regarding appellant's intoxication at the time of his arrest was properly before the jury. *Albrecht v. State*, supra; *Williams v. State*, supra. No error in the argument is shown.

We further observe that the objection made at trial was that there was no evidence as to the percentage of alcohol in appellant's drinks. Such objection was not sufficient to bring the trial court's attention to the error now complained of on appeal. *Cain v. State*, supra; *Bouchillon v. State*, supra.

■■■ Appellant again complains of improper jury argument. The record reflects:

"MR. BODIFORD: I ask that you recall his statement to the City Council. For every black killed, there will be ten pigs die."

This was in evidence. No objection was made to the argument now challenged. Thus, nothing is presented for review. *Rodriguez v. State*, 530 S.W.2d 944 (Tex.Cr. App.1975); *Jackson v. State*, 516 S.W.2d 167 (Tex.Cr.App.1974).

Appellant's final contention is that the prosecutor's jury argument at the punishment phase of the trial was improper. The record reveals that appellant was referred to as a "troublemaker" and as a "freeloader."

The State had established during the guilt phase of the trial that appellant had assaulted the arresting officers and that he had once threatened the Houston Police Department with violence. The prosecutor's reference to him as a "troublemaker" was a reasonable deduction from the evidence. Cf. *Cain v. State*, supra.

With regard to the argument that appellant was a "freeloader", the State contends that such argument was a reasonable deduction from the evidence because appellant was going to school at the time and was apparently unemployed. We cannot agree that this type of argument is justified under these circumstances, but we find that the error was harmless.

No reversible error is shown. The judgment is affirmed.

VOLLERS, J., not participating.

ROBERTS, Judge, dissenting.

This case is before us pursuant to an out-of-time appeal granted to appellant by per curiam opinion in No. 49,828 on April 2, 1975.

At 3:30 a. m. on November 12, 1971, Houston Police Officers Miller and Trumble noticed appellant, then a candidate for the Houston City Council, entering Dowling Street in his car with his headlights out. Appellant turned his lights on but then increased his speed to forty-seven miles-per-hour in a thirty mile-per-hour zone. After pursuing appellant for more than ten blocks, the officers finally stopped him and pulled up beside his car. Appellant resisted removal from his automobile and, after a struggle, the officers subdued and handcuffed him on the ground outside his car. Miller testified that appellant appeared to be "under a form of intoxication."

In response to a call for assistance, other officers began arriving at the scene almost immediately. Officer Bell, in response to Miller's request, conducted a search of the interior of appellant's car, finding a penny matchbox containing marihuana on the driver's side of the dashboard. Bell testified that this search commenced while appellant was still lying handcuffed face down on the ground with Miller and Trumble kneeling beside him. Miller testified that the search was conducted while appellant sat handcuffed in the back of his patrol car, with both officers standing next to him.

Appellant contends, among other things, that the search of his car was unlawful and that the State improperly impeached his testimony.

I cannot agree that the warrantless search which led to the discovery of the marihuana was constitutional, and I would reverse on this ground. I observe at the outset that this search cannot be justified as an automobile search based on probable cause and exigent circumstances. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Scott v. State*, 531 S.W.2d 825 (Tex. Cr.App.1976); *Stoddard v. State*, 475 S.W.2d 744 (Tex.Cr.App.1972); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974). Neither the traffic offenses nor the assault carried with them fruits or instrumentalities for which there was probable cause to search. *Thomas v. State*, —— S.W.2d —— (No. 50,941, delivered March 10, 1976 and now pending on rehearing). The liquor which Officer Miller smelled on appellant's breath and his apparent intoxicated condition might have afforded cause to search

for liquor. *Thompson v. State*, 398 S.W.2d 942 (Tex.Cr.App.1966); *Adair v. State*, 427 S.W.2d 67, 74 (Tex.Cr.App.1967) (dissenting opinion). But a search is reasonable only if its scope is limited to the purpose which justified its initiation. *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975); *Haynes v. State*, 475 S.W.2d 739 (Tex.Cr.App.1971). A search for the purpose of discovering liquor should not extend into a matchbox. Compare *Pace v. Beto*, 469 F.2d 1389 (5th Cir. 1972). Nor did probable cause to search develop after appellant had been arrested and subdued. *Cf. Taylor v. State*, 421 S.W.2d 403 (Tex.Cr.App.1967); *Attwood v. State*, 509 S.W.2d 342 (Tex.Cr.App. 1974); *Borner v. State*, 521 S.W.2d 852, 856 (Tex.Cr.App.1975).

Therefore, the search can only be upheld as a protective search for weapons or as a search incident to an arrest. It is well established that officers are justified in conducting a limited search for weapons after an investigatory detention, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970); or even after an arrest for a routine traffic offense if the officer has reason to believe that he is in danger of bodily harm or that the suspect is armed or dangerous. *Lewis v. State*, 502 S.W.2d 699 (Tex.Cr.App.1973); *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App.1974); *Borner v. State*, supra at 855; *Wallace v. State*, 467 S.W.2d 608 (Tex.Cr.App.1971). In this case, the appellant had already been either subdued and handcuffed on the ground or placed in the back of the patrol car, with two officers guarding him, before the car search by a third officer began. Appellant was scarcely in a position to harm anyone, even if he could have lunged back into the car for a weapon. *Cf. Imhoff v. State*, 494 S.W.2d 919 (Tex.Cr.App.1973). The officers testified at trial that they were not in fear of their lives at the time the search was conducted. *Beck v. State*, 547 S.W.2d 266 (Tex.Cr.App.1976); *Keah v. State*, 508 S.W.2d 836 (Tex.Cr.App.1974); *cf. Wood v. State*, supra. Furthermore, it is hard to imagine a dangerous weapon being concealed in a penny matchbox, although this was the justification advanced for the search by the officers. *Pace v. Beto*, supra. I conclude, therefore, that the car search cannot be justified as necessary for the protection of the arresting officers.

The exception to the warrant requirement for searches incident to arrest, however, is broader than the protective *Terry*-type search. For one thing, its objects can include destructible evidence as well as weapons. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The search of the person permitted by *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), after a routine traffic arrest, was much broader than that permitted by *Terry v. Ohio*, supra, even extending into a crumpled cigarette package. And the scope of the search incident to arrest extends to areas under the arrestee's immediate control. *Chimel*, supra; *Preston*, supra. Clearly, the search could not extend to the locked glove compartment or the trunk of the car, since an arrestee could hardly reach these areas quickly and obtain a weapon or destroy evidence. *Fry v. State*, 493 S.W.2d 758, 761 (Tex.Cr.App. 1972); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974) (dissenting opinion, fn. 2).

There can be no question that appellant was under arrest at the time of the search. In contrast to the situations in *Beck*, supra, *Thomas*, supra, and *Wilson*, supra, he was not merely being detained during the writing of a traffic citation. The question becomes, then, was the scope of the search reasonably related to its purpose? The cases make it clear that the area searched must be under the arrestee's immediate control, and be for the purpose of preventing him from obtaining weapons or destroying evidence. Appellant was either face down on the ground with his hands handcuffed behind him or he was sitting in the back of the patrol car in handcuffs when the search began. At this time, Officers Miller and Trumble were either both kneeling beside the appellant on the ground or

standing between his seat in the patrol car and the car being searched. There is no way the appellant could have reached a weapon or evidence in his car, since the car was no longer under his immediate control. *Beck*, supra; and see *Chimel*, supra. I would therefore hold that the search was not incident to appellant's arrest.[1]

From all of the foregoing, I conclude that the search was unlawful and hence in violation of the Fourth Amendment of the United States Constitution as well as Art. I, Sec. 9 of the Texas Constitution. It follows that the trial court erred in failing to suppress the seized evidence and that the judgment should be reversed for this reason.

PHILLIPS, J., joins in this dissent.

---

1. Neither can I agree that the search was legitimate as an "inventory search" or that the search was harmless because a later inventory might have been allowable. See *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Robertson v. State*, 541 S.W.2d 608 (Tex.Cr.App.1976). There is simply nothing in this record to show that an inventory search was undertaken or that such searches were a part of routine police practice. See *Opperman*, supra, 428 U.S. at 366, 369, 375–376, 96 S.Ct. 3092.