PD-0051-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/2/2015 2:45:05 PM
Accepted 3/2/2015 3:12:03 PM
ABEL ACOSTA
CLERK

**PD-0051-15**

# IN THE COURT OF CRIMINAL APPEALS OF
# THE STATE OF TEXAS

---

## MAX EDWARD WEBB

*Appellant,*

## vs.

## THE STATE OF TEXAS

*Appellee*

---

Petition for Discretionary Review from the First Court of Appeals in
No. 01-14-00200-CR, affirming the conviction of Cause No. 1399396 from
the 248th District Court of Harris County, Texas
Honorable Katherine Cabaniss, Judge Presiding

---

FILED IN
COURT OF CRIMINAL APPEALS

March 2, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender,
Harris County, Texas

---

**MELISSA MARTIN**
Assistant Public Defender
Harris County, Texas
TBN. 24002532
1310 Prairie, Suite 980
Houston, TX 77002
Phone: (713)274-6709
Fax: (713)437-4319
melissa.martin@pdo.hctx.net

**Attorney for Appellant**

IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                                      Max Edward Webb
                                                TDCJ# 01924604
                                                Garza West Unit, TDCJ
                                                4250 Highway 202
                                                Beeville, TX 78102


TRIAL PROSECUTOR:                               Molly Wurzer
                                                Assistant District Attorney
                                                Harris County Texas
                                                1201 Franklin St, 6th Floor
                                                Houston, TX 77002


DEFENSE COUNSEL AT TRIAL:                       Joseph Owmby
                                                Attorney at Law
                                                708 Main St Ste 790
                                                Houston, TX 77002


COUNSEL ON APPEAL FOR APPELLANT:                Melissa Martin
                                                Assistant Public Defender
                                                Harris County TX
                                                1201 Franklin St, 13th Floor
                                                Houston, TX 77002
                                                melissa.martin@pdo.hctx.net


PRESIDING JUDGE:                                Katherine Cabaniss
                                                248th District Court
                                                Harris County, TX
                                                1201 Franklin St, 16th Floor
                                                Houston, TX 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................................ii

TABLE OF CONTENTS...................................................................................iii

INDEX OF AUTHORITIES ............................................................................. iv

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF PROCEDURAL HISTORY ........................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ................................................... 1

GROUND FOR REVIEW ................................................................................ 1

> WHETHER THE COURT OF APPEALS ERRED IN FINDING THAT THE SCOPE OF THE *TERRY* SEARCH WAS NOT PRESERVED BY THE MOTION TO SUPPRESS AND TRIAL COUNSEL'S BRIEF ON THE MOTION. *TERRY V. OHIO*, 392 U.S. 1, 27 (1968); TEX. R. APP. P. 33.1(A); *FORD V. STATE*, 305 S.W.3D 530, 533 (TEX.CRIM. APP. 2009). U.S. CONST. AM. IV; TEX. CONST. ART.1 §9.

PRAYER ................................................................................................ 10

CERTIFICATE OF SERVICE........................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................... 12

APPENDIX

# INDEX OF AUTHORITIES

## Cases

*Davis v. State*, 829 S.W. 2d 218 (Tex.Crim.App., En Banc, 1992) ..................................... 3

*Duncantell v. State,* 563 S.W.2d 252 (Tex.Cr.App.1978) (Roberts, J., dissenting) ............. 3

*Ford v. State*, 305 S.W.3d 530 (Tex.Crim. App. 2009) ....................................................... 1, 2

*Hereford v. State*, 339 S.W.3d 111, 115 n.4 (Tex.Crim.App.2011) ...................................... 5

*Lemons v. State*, 135 S.W.3d 878 (Tex. App.—Houston [1st Dist.] 2004, no pet.) .......... 5

*Pace v. Beto,* 469 F.2d 1389 (5th Cir.1972) .......................................................................... 3

*Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) ..............passim

*Thomas v. State*, 853 S.W.2d 734 (Tex. App.—Houston [1st Dist.] 1993, no pet) ............ 4

*Webb v. State*, No. 01-14-00200-CR, 2014 WL 7174250 at *4 (Tex.App.—Houston [1st Dist.])(mem. op. not designated for publication) .................................................. 1, 2, 5

## Treastises

3 W. LaFave, Search and Seizure § 9.4(d) (2d ed. 1987) ..................................................... 3

## Rules

Tex. R. App. P. 33.1(a) .......................................................................................................... 2

Tex. R. App. P. 66.3(b) .......................................................................................................... 1

## Constitutional Provisions

Tex. Const. art.1 §9 ............................................................................................................... 1

U.S. Const. Am. IV ............................................................................................................... 1

## Statement of the Case

On March 4, 2014 the trial judge denied Mr. Webb's dispositive motion to suppress the contraband discovered during a warrantless search (R.R. at 36). Mr. Webb had pleaded to possession of more than 4 grams and less than 200 grams of methamphetamine on March 4, 2014, with a recommendation of 25 years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) (C.R. at 124-25). The state had pleaded two prior final felony convictions, to which Mr. Webb stipulated (C.R. at 126). Mr. Webb filed a timely notice of appeal on March 4, 2014. No Motion for New Trial was filed.

## Statement of Procedural History

The First Court of Appeal affirmed the trial court's judgment in *Webb v. State*, No. 01-14-00200-CR, 2014 WL 7174250 at *4 (Tex. App.—Houston [1st Dist.])(mem. op. not designated for publication).

## Ground for Review

Whether the court of appeals erred in finding that the scope of the *Terry* search was not preserved by the motion to suppress and trial counsel's brief on the motion. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); Tex. R. App. P. 33.1(a); *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). U.S. Const. Am. IV; Tex. Const. art.1 §9.

Review is proper under Tex. R. App. Pro. 66.3(b) because the court of appeals in this case decided an important question of state and federal law that has not been, but should be, settled by this Court.

1

In his appellate brief, Mr. Webb argued that, even had the initiation of the search been justified by the facts, the officers at the scene far exceeded the scope permitted by *Terry v. Ohio*, 392 U.S. 1 (1968). The court of appeals agreed with the state that because trial counsel did not address the scope of the search directly in his argument at the hearing on the motion, he failed to preserve error on that issue. *Webb* at WL 7174250 at *4. The court of appeals refers to Tex. R. App. P. 33.1(a) requiring a timely objection and a ruling on the objection in order to preserve error for review. Further, the court of appeals quoted this Court elucidation of the rule as follows:

> "The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary correct the purported error."

*Id,* citing *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009).

The court of appeals cited no cases for the proposition that a motion to suppress the evidence from a *Terry* search does not encompass both the justification to begin the search and the justification to continue it past the point where officer safety ceases to be a reasonable fear under the circumstance.

This writer has been unable to find case law from this Court addressing whether a motion to suppress based on *Terry* must specifically raise the scope as a separate issue from the propriety of the stop. Mr. Webb contends that this question is one the Court should address and resolve.

In *Davis v. State*, this Court found that while an officer's initial pat down of Davis was authorized by *Terry*, the officer's opening a matchbox found in his pocket

exceeded the scope of *Terry's* authority. *Davis v. State*, 829 S.W. 2d 218, 221 (Tex. Crim. App., En Banc, 1992). In *Davis*, the officer testified that he had seen matchbox that contained narcotics; he then attempted to justify having opened the matchbox because it might have contained a razor blade. This Court stated:

> Here, the facts did not justify a further search for weapons. We conclude that it is unreasonable for two armed police officers to fear a razor blade that might be contained in a matchbox. *See Pace v. Beto,* 469 F.2d 1389, 1390 (5th Cir.1972) ("[T]he need to discover potentially dangerous weapons can not (sic) justify the opening of the matchbox."); *Duncantell v. State,* 563 S.W.2d 252, 259 (Tex.Cr.App.1978) (Roberts, J., dissenting) ("[I]t is hard to imagine a dangerous weapon in a penny matchbox ..."); 3 W. LaFave, Search and Seizure § 9.4(d) (2d ed. 1987.

> Although there were adequate grounds to search appellant for weapons, the scope of the search conducted by Officer Bonasto clearly exceeded any justification that he might have had to search for weapons for his protection and therefore rendered the cocaine inadmissible under Article I, section 9 of the Texas Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.

*Davis v. State*, 829 S.W.2d 218, 221 (Tex. Crim. App. 1992).

The trial counsel in *Davis* raised the scope specifically in the motion to suppress. In this case, trial counsel's written motion stated, "Defendant was seized without a warrant, probable cause or reasonable suspicion to conduct an investigatory detention. **His person was searched in violation of his constitutional rights**" (C.R. at 12). Further, in his bench brief to the trial court, trial counsel describes the circumstances of the search, which are preserved on videotape, and concludes, "There are no facts which justify the detention **and search** of the defendant" (C.R. at 121).

3

During the hearing on the motion, Sergeant Marshall refers to the search as a "Terry frisk" that was conducted for "officer safety" (R.R. at 31, 37, 38, 39, 40). At the close of his cross-examination of the sergeant, defense counsel and he engaged in the following exchange:

Q.      All right. Did you recover both these knives?

A.      I believe they were placed in a bag but, no, I personally did not recover them.

Q.      Now, were the knives illegal?

A.      No, sir.

Q.      So you say you recovered the first knife, you recovered the second knife and you continued to search him?

A.      To conduct a *Terry* frisk.

"The limited search for weapons authorized under *Terry, supra,* may be no more intrusive than is reasonably necessary to achieve its purpose, any more extensive search must be supported by probable cause, or it is illegal." *Thomas v. State*, 853 S.W.2d 734, 736 (Tex. App.—Houston [1st Dist.] 1993, no pet).

Mr. Webb's position is that trial counsel preserved error both for the initiation of the search and for its continuance after the knives had been found because, as this court pointed out in *Thomas, supra*, the legality of the entire search is defined by the limitations imposed by *Terry*. In other words, the authority for the search encompasses the facts leading to it and the facts calling for it to stop. The sergeant in the above

4

conversation characterized the continuation of the search after the knives were recovered as a *"Terry frisk."* There is no contention by either the sergeant or the state that the continuation of the search was supported by probable cause; it was all one search, purportedly for officer safety.

The appellant's hands were cuffed behind his back and shortly thereafter he was on the ground—he was no longer a danger, even if the object in the front of his pants had been a weapon. Someone with his hands behind his back cannot reach an object in his pants, particularly after he is pinned to the ground by two, then three officers and has become unconscious from discharges of the Taser.[1]

> *Terry* permits a brief stop of a person whose suspicious conduct leads an officer to conclude that criminal activity **\*884** may be afoot; and it further permits a pat-down search of the person for weapons when the officer is justified in believing that the person may be armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). Although an officer may be authorized to conduct a pat-down search, the officer may do so **only to the extent necessary to discover weapons that might be used to harm the officer or others.** *Id.*

*Lemons v. State*, 135 S.W.3d 878, 883-84 (Tex. App.—Houston [1st Dist.] 2004, no pet.)

---

[1] The court of appeals apparently mistakes the Officer Beck's testimony that he did not deploy his taser to mean it was "never fired." *Webb*, WL 7174250 at *4; (R.R. at 13). However, the testimony continues that he placed the weapon against Mr. Webb's body and explained that doing so "just gives an electrical charge to individual trying to gain compliance. It's supposed to be a momentarily incapacitation tool that we use trying to get compliance" R.R. at 13). This Court, in a footnote, clarifies this process: "in a drive stun" the officer removes the wire firing cartridge, placed the Taser gun directly against the target's body, and pulls the trigger to give a jolt of electricity to a concentrated area of the body." *Hereford v. State*, 339 S.W.3d 111, 115 n.4 (Tex.Crim.App.2011). In that case, the officer referred to the process as "pain compliance." *Id* at 115.

5

The search was illegal because it extended beyond the point of "officer safety" and was obviously a search for narcotics. Mr. Webb believes trial counsel preserved error by referring to the search as illegal and in his questioning of the officer regarding the need for it to continue past the point of having recovered the knives and handcuffing Mr. Webb. The trial court had adequate information before it to understand that the motion addressed both the justification for the search and its scope.

## Prayer

Mr. Webb respectfully requests that this Court grant review and, after a full briefing on the merits, issue an opinion on this important issue of state and federal law so that the bench and the bar of this state will know how to address similar issues in the future.

**ALEXANDER BUNIN**
Harris County Public Defender

*/s/ Melissa Martin*

_____

**MELISSA MARTIN**
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, TX 77002
Phone 713-274-6709
Fax 713-437-4319
Texas Bar No. 24002532
melissa.martin@pdo.hctx.net

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Petition for Discretionary Review was e-served to Alan Curry, Assistant District Attorney, Harris County Texas and to the State Prosecuting Attorney.

/s/Melissa Martin

_____

MELISSA MARTIN


**CERTIFICATE OF COMPLIANCE**

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(e)(i)*.

1.      Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4 (i)(1)*, this brief contains 1,593 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes produced by Microsoft Word software.

3.      Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Melissa Martin

_____

**MELISSA MARTIN**

2014 WL 7174250
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH. TEX.R.APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (1st Dist.

Max Edward Webb, Appellant

v.

The State of Texas, Appellee

NO. 01–14–00200–CR    |
Opinion issued December 16, 2014

On Appeal from the 248th District Court, Harris County,
Texas, Trial Court Case No. 1399396

**Attorneys and Law Firms**

Devon Anderson, Alan Curry, Abbie Miles, for The State of
Texas.

Melissa Martin, for Max Edward Webb.

Panel consists of Justices Keyes, Higley, and Brown.

**MEMORANDUM OPINION**

Harvey Brown, Justice

 **\*1**  Max Webb pleaded guilty to possession of
methamphetamine [1] after the trial court denied his motion to
suppress evidence recovered during a *Terry* search. In two
issues, Webb asserts that the court should have granted the
motion because the detention and search lacked justification
or, alternatively, the search was initially justified but became
unconstitutionally broad. We affirm.

**Background**

A motel owner asked two police officers, Sergeant G. Beck
and Deputy C. Marshall, to give a criminal trespass warning
to a man and a woman occupying one of the motel's rooms
without authorization. The owner told the officers that he had

previously notified the woman, and possibly also the man,
that they were not supposed to be there.

As the officers approached, they observed the man, later
identified as Webb, exiting the room with two large duffle
bags. The woman exited right behind him. As she left the
motel room, she dropped a baggie containing a substance
that Deputy Marshall, an officer who specializes in narcotics
crimes, recognized to be methamphetamine.

Sergeant Beck "made contact" with the woman while Deputy
Marshall "made contact" with Webb. Deputy Marshall
testified that he asked Webb to put down the duffel bags,
and when Webb complied Deputy Marshall spotted a black
knife in Webb's back pocket. Deputy Marshall asked Webb
if he had any weapons on him; Webb replied that he did not.
Deputy Marshall detained Webb and began frisking him for
weapons.

Deputy Marshall ordered Webb to turn and place his hands
on a nearby wall. He quickly found two knives on Webb.
As Deputy Marshall reached to retrieve the second knife,
Webb took his hands off the wall. The deputy handcuffed
Webb as a safety precaution and then continued the frisk.
According to his testimony, Deputy Marshall felt an object,
which he believed to be a gun, on the inside of Webb's thigh.
When Deputy Marshal discovered the object, Webb suddenly
turned, lost his balance, and fell on the floor. Because Webb
continued to resist the search, Sergeant Beck came over,
helped restrain Webb, and unholstered his Taser.

Deputy Marshall testified that the officers did not remove
the object through Webb's waistband because they did not
know in which direction the "gun" was pointed and did
not want it to accidentally discharge. Eventually, two more
officers arrived to help secure Webb. The officers cut through
Webb's pants and retrieved the object, which was a cylinder
of methamphetamine wrapped in pantyhose. The officers
arrested Webb.

Webb moved to suppress the methamphetamine, arguing that
his detention and search were not justified under *Terry v.
Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968). The trial court denied
the motion. Webb pleaded guilty but retained his right to
appeal the denial of his motion.

**Motion to Suppress**

In two issues, Webb contends that the trial court erred by denying his motion to suppress because (1) the police had no justification under *Terry* to detain or frisk him and (2) the scope of the frisk went beyond the constitutional limits of a *Terry* frisk.

## A. Standard of review

**\*2** In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We view the evidence in the light most favorable to the trial court's ruling and give "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility or demeanor. *Gonzales v. State,* 369 S.W.3d 851, 854 (Tex.Crim.App.2012); *Carmouche,* 10 S.W.3d at 327. But we apply a de novo standard of review to the application of search and seizure law and to mixed questions of law and fact that do not depend on credibility or demeanor. *Gonzales,* 369 S.W.3d at 854; *Carmouche,* 10 S.W.3d at 327.

## B. Justification for detention and frisk

In his first issue, Webb asserts that, under the standards set forth in *Terry* and subsequent cases, the officers had no justification to (1) initiate an investigative detention or (2) frisk him for weapons.

### 1. Detention

A law enforcement officer may conduct a brief investigative detention, or "*Terry* stop," when he has a reasonable suspicion that an individual is involved in criminal activity. *See Terry,* 392 U.S. at 22, 88 S.Ct. at 1880; *see also Corbin v. State,* 85 S.W.3d 272, 276 (Tex.Crim.App.2002) ("A seizure [of a person] based on reasonable suspicion ... will generally be reasonable."). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational interferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App.2005). Courts review the totality of the circumstances when determining whether a police officer has reasonable suspicion. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585 (1989); *Ford,* 158 S.W.3d at 492–93. Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.' " *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *United States*

*v. Martinez–Fuerte,* 428 U.S. 543, 560–61, 96 S.Ct. 3074, 3084 (1976) ("[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure."). We judge the reasonableness of a police officer's actions from the perspective of a reasonable officer at the scene without the advantage of hindsight. *Rhodes v. State,* 945 S.W.2d 115, 118 (Tex.Crim.App.1997).

In this case, Deputy Marshall detained Webb after he approached the motel room to issue a criminal trespass warning. Several facts support the conclusion that Deputy Marshall had reasonable suspicion to justify this detention. Both Webb and his companion were exiting the same hotel room. No one else was with them. His companion dropped a baggie of methamphetamine. Webb was carrying two large duffle bags out of the room. According to Deputy Marshall, Webb appeared nervous. Deputy Marshall also testified Webb denied having any weapons on him, yet Deputy Marshall saw a knife in Webb's back pocket. Webb concedes that the area has a high crime rate; Deputy Marshall testified that the motel is in a high-crime area; and Sergeant Beck testified that the motel is a "known place" for prostitution, burglaries, car thefts, and narcotics. *See Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1924 (1972) (concealed weapon, possible narcotics, and high-crime area justified *Terry* stop).

Webb argues that the officers had no reasonable suspicion that he was engaging in criminal trespass because he did not have notice that he was trespassing. Prior notice is an element of that offense. Tex. Penal Code Ann. § 30.05 (West Supp.2014). Notably, the record contains contradictory evidence regarding whether Webb received prior notice. We assume the factfinder resolved this conflict in favor of the decision to overrule the motion to suppress and defer to that conclusion. *Gonzales,* 369 S.W.3d at 854. Webb also argues that his mere proximity to his companion when she threw down the bag of methamphetamine is not sufficient to create reasonable suspicion that he was also possessing narcotics.

**\*3** Both of these arguments fail because reasonable suspicion does not require probable cause for each element of a particular offense. *Derichsweiler v. State,* 348 S.W.3d 906, 916–17 (Tex.Crim.App.2011); *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991). "It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Crockett,* 803 S.W.2d at 311. Further, the circumstances

justifying a *Terry* stop do "not necessarily mean that the information [relied upon to justify the detention] must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent." *Derichsweiler,* 348 S.W.3d at 917. "It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—i.e., it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing." *Id.*

Here, Deputy Marshall had much more than a hunch. Webb was in a high-crime area, carrying a knife, trespassing, leaving a private room together with a companion who was carrying narcotics, and removing unknown items from that private room in two large duffle bags. While we agree with Webb's assertion that proximity alone does not create the requisite reasonable suspicion, there was much more than mere proximity here. *See Lippert v. State,* 664 S.W.2d 712, 721–22 (Tex.Crim.App.1984); *Salazar v. State,* 893 S.W.2d 138, 142 (Tex.App.–Houston [1st Dist.] 1995, pet. ref'd, untimely filed). Webb's proximity to his companion and the additional circumstances discussed above justify his detention because the totality of the circumstances supports the reasonable suspicion that Webb was engaged in criminal activity. *See Salazar,* 893 S.W.2d at 142.

## 2. Frisk

Webb also contends that the officers did not have justification to conduct a *Terry* frisk. "Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous." *Carmouche,* 10 S.W.3d at 329. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

According to the officers' testimony, they frisked Webb because: (1) Webb's companion had just thrown down a bag of methamphetamine, and weapons are often associated with narcotics; (2) Webb had a knife; and (3) Webb lied about having a knife after Deputy Marshall saw the weapon. Together, these provide an objective basis for reasonably prudent officers to be concerned for their safety. Weapons are frequently associated with narcotics, and this association can help justify a *Terry* frisk. *Carmouche,* 10 S.W.3d at 330. That Deputy Marshall saw a knife on Webb's person, and that

Webb lied about this weapon after the deputy saw it, provides additional justification for the frisk.

Webb responds that the record contains evidence directly contradicting Deputy Marshall's testimony. While that may be true, we defer to the factfinder to resolve questions of fact and weigh the evidence. *Gonzales,* 369 S.W.3d at 854. In this case, we assume the factfinder chose to credit the deputy's testimony and discount any contrary evidence. *See id.* The reasons given in the deputy's testimony justify the *Terry* frisk.

We conclude that the evidence, when viewed in the light most favorable to the trial court's finding, demonstrates justification for both the detention and the frisk of Webb. Accordingly, we overrule Webb's first issue.

## C. Scope of search

**\*4** In his second issue, Webb asserts that the scope of the *Terry* frisk went beyond constitutional bounds. "When a protective search is warranted, the search must be carefully limited to that which is necessary to discover weapons that could reasonably harm the police officers or others." *Balentine v. State,* 71 S.W.3d 763, 770 (Tex.Crim.App.2002). Webb contends that the officers had no reason to fear the unknown object in his pants because, by the time it was retrieved, the officers had already handcuffed Webb, pinned him to the ground, and drawn—but never fired—a Taser, thereby eliminating any threat Webb previously posed to them.

The State contends that Webb did not raise this issue before the trial court and thus failed to preserve any error. Preservation of error requires a party to timely file an objection and to obtain a ruling on the objection. Tex. R. App. P. 33.1(a). "The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Ford v. State,* 305 S.W.3d 530, 533 (Tex.Crim.App.2009).

This case involves two motions to suppress: one filed by Webb pro se and another filed by Webb's trial counsel. Webb withdrew his pro se motion from the court's consideration and never obtained a ruling. Therefore, his pro se motion does not preserve any error. His trial counsel's motion asserts merely that "[h]is person was searched in violation of his constitutional rights." This language is too broad to give the trial court notice of the specific constitutional injury alleged. Webb's counsel also filed a brief in support of this motion, which objects that "the officers do not articulate, nor is there

evidence of any reason to believe defendant was armed or presented a danger to the officers *prior to the initiation of the search.*" (emphasis added). The brief limits its argument to whether justification existed to initiate the frisk; it does not address whether, once initiated, the frisk subsequently exceeded the scope of *Terry.* Similarly, in the hearing on the motion, Webb's counsel argued that "[the State has] offered no justification for searching the defendant for weapons...." Counsel thereby limited his argument to the justification for the search and did not challenge the scope of that search.

We conclude that Webb did not preserve any error regarding the scope of the *Terry* frisk. Accordingly, we overrule Webb's second issue.

### Conclusion

We affirm the judgment of the trial court.

Footnotes

1    TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West 2010).

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.